UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X    Case No.: 23-cv-06095
RICARDO DIBARTOLO,

Plaintiff,

<strong><u>ORAL ARGUMENT<br>REQUESTED</u></strong>

-against-

THE SEGAL GROUP, INC. and DAVID
BLUMENSTEIN, *in his individual and official capacities,*

Defendants.
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
THE SEGAL GROUP, INC. AND DAVID BLUMENSTEIN
<u>MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. 12(b)(6)</u>**

MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
*Attorneys for Defendants*
*The Segal Group, Inc. and David Blumenstein*

## **TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES………………………………………………………………... ii

PRELIMINARY STATEMENT……………………………………………………………… 1

STATEMENT OF FACTS…………………………………………………………................ 2

POINT I…………..………………………………………………………………………… 5

    I.       STANDARD OF REVIEW………………………………………………................ 5

          A.  The Court May Properly Consider Certain Evidence Outside
              The Pleading…………………………………………………………………5

          B.  The Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6)……….................. 6

POINT II………………………………………………………………………………… 7

    II.     PLAINTIFF FAILS TO STATE A CLAIM FOR AGE
           DISCRIMINATION UNDER THE NYCHRL……………………......……………7

          A.  Plaintiff's Voluntary Agreement To Retire Pursuant
              To The Executed Transition Agreement Precludes His Ability To
              Establish That He Suffered An Adverse Employment Action……………….….. 7

          B.  The NYCHRL Age Discrimination Cause Of Action Also Fails As A
              Matter Of Law Because The Complaint Fails To Plead Sufficient Facts
              That Plausibly Give Rise To An Inference Of Discrimination…...……………… 10

POINT III……………………………………………………………………….………… 12

    III.    PLAINTIFF FAILS TO STATE A CLAIM FOR A BREACH OF
           CONTRACT UNDER NEW YORK COMMON LAW…………………………...12

          A.  The Clear And Unambiguous Severance Provisions To The
              Confidentiality/Non-Solicitation Agreement Demonstrate
              Plaintiff Was Not Entitled To 8 Months' Severance And Thus
              There Was No Breach…………………………………….……………………… 12

          B.  The Breach of Contract Claim Asserted Against David
              Blumenstein, Individually Should Be Dismissed As Mr. Blumenstein
              Was Not A Signatory To The Confidentiality/Non-Solicitation
              Agreement………………………………………………………………………15

CONCLUSION……………………………………………………….………………...15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Adia v. MTA Long Island Rail Road Co.*,
  No. 02-CV-6140, 2006 U.S. Dist. LEXIS 51045 (E.D.N.Y. July 16, 2006) ............................ 11
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 2, 5, 6, 7
*Askin v. Dep't of Educ. of City of N.Y.*,
  110 A.D.3d 621 (1st Dept. 2013) ..................................................................... 8
*Bell Atlantic Corp v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 2, 6, 7
*Blige v. City Univ. of New York*,
  No. 15-cv-08873, 2017 WL 498580 (S.D.N.Y. Jan. 19, 2017) ................................ 11
*CityR Grp. Holdings LLC v. Foresite Realty Mgmt., LLC*,
  No. 17 Civ. 7850, 2019 WL 1437519 (S.D.N.Y. Mar. 29, 2019) .............................. 15
*Culmone-Simeti v. New York City Dep't of Educ.*,
  No. 17 Civ. 02313 (ER), 2019 WL 2409736 (S.D.N.Y. June 7, 2019) ...................... 9
*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) ............................................................................. 7
*Dale v. L'Oreal USA, Inc.*,
  No. 22-CV-00427, 2023 WL 3984345 (E.D.N.Y. June 13, 2023) ............................ 6
*Drew v. Plaza Const. Corp.*,
  688 F. Supp. 2d 270 (S.D.N.Y. 2010) ................................................................ 7
*Durant v. New York City Hous. Auth.*,
  No. 12-CV-937, 2013 WL 1232501 (E.D.N.Y. Mar. 4, 2013) ................................ 10
*Eternity Glob. Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*,
  375 F.3d 168 (2d Cir. 2004) ........................................................................... 13
*Evans v. CNA Ins. Cos.*,
  No. 96-CIV. 6775 (DLC), 1997 WL 633453 (S.D.N.Y. Oct. 10, 1997) ...................... 8
*Gant v. Brooklyn Developmental Ctr.*,
  307 A.D.2d 307, 762 N.Y.S.2d 507 (2nd Dept. 2003) .......................................... 8,9
*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) ........................................................................... 5, 6
*Gorzynski v. Jet Blue Airways Corp.*,
  596 F.3d 93 (2d Cir. 2010) ............................................................................. 10
*Greenfield v. Philles Recs.*,
  98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) .................................... 13
*In re Merrill Lynch & Co., Inc.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................ 5
*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
  530 F. Supp. 3d 447 (S.D.N.Y. 2021) ............................................................. 13, 14

*Jannazzo v. United States,*
  No. 15-CV-3506(ADS)(AYS), 2016 WL 1452392 (E.D.N.Y. Apr. 13, 2016) .......................... 5
*Johnson v. Priceline.com, Inc.,*
  711 F.3d 271 (2d Cir. 2013) ........................................................................................... 13
*Kamerman v. Steinberg,*
  891 F.2d 424 (2d Cir. 1989) ............................................................................................. 9
*L-7 Designs, Inc. v. Old Navy LLC,*
  647 F.3d 419 (2d Cir. 2011) ............................................................................................. 6
*Lentell v. Merrill Lynch & Co.,*
  396 F.3d 161 (2d Cir. 2005) ............................................................................................. 5
*Lockheed Martin Corp. v. Retail Holdings,*
  639 F.3d 63 (2d Cir. 2011) ............................................................................................. 14
*Mathias v. Jacobs,*
  167 F. Supp. 2d 606 (S.D.N.Y. 2001) ............................................................................ 10
*McNichol v. Falco,*
  No. 16 CV 2119, 2020 WL 5802492 (S.D.N.Y. Sept. 28, 2020) ....................................... 9
*Mesias v. Cravath, Swaine & Moore LLP,*
  106 F.Supp.3d 431 (S.D.N.Y. 2015) .............................................................................. 11
*Moore v. Verizon,*
  No. 13-cv-6467, 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) ........................................... 10
*Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc.,*
  111 A.D.3d 1374, 975 N.Y.S.2d 280 (4th Dept. 2013) .................................................... 13
*Offor v. Mercy Med. Ctr.,*
  167 F.Supp.3d 414 (E.D.N.Y. 2016) .............................................................................. 11
*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.,*
  830 F.3d 152 (2d Cir. 2016) ........................................................................................... 13
*Parker v. Chrysler Corp.,*
  929 F. Supp. 162 (S.D.N.Y. 1996) ................................................................................... 9
*Pasha v. William M. Mercer Consulting, Inc.,*
  No. 00 Civ.8362, 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004) ......................... 12
*Portal Instruments, Inc. v. Leo Pharma,*
  No. 22 Civ. 09156, 2023 WL 4640163 (S.D.N.Y. July 20, 2023) .................................... 13
*R/S Assoc. v. New York Job Dev. Auth.,*
  98 N.Y.2d 29, 744 N.Y.S.2d 358, 771 N.E.2d 240 (2002) .............................................. 13
*Ramos v. City of New York,*
  No. 708792/15, 2017 BL 216865 (N.Y. Sup. Ct. May 8, 2017) ......................................... 8
*Ruotolo v. City of New York,*
  514 F.3d 184 (2d Cir. 2008) ............................................................................................. 7
*Salesky v. David Peyser Sportswear, Inc.,*
  94 Civ. 9036, 1996 WL 262985 (S.D.N.Y. May 17, 1996) ............................................... 9
*Sander v. Enerco Grp., Inc.,*
  No. 21 CV 10684, 2023 WL 1779691 (S.D.N.Y. Feb. 6, 2023) ........................................ 5
*Tyler v. City of Kingston,*
  74 F.4th 57 (2d Cir. 2023) ............................................................................................... 2
*Wetzel v. Systra USA Inc.,*
  No. 151707/22, 2022 WL 16564840 (N.Y. Sup. Ct. November 1, 2022) ............................ 8

*Wilson v. Southampton Hosp.*,
No. 14-CV-5884(ADS)(GRB), 2015 WL 5124481 (E.D.N.Y. Aug. 28, 2015) ........................ 5

Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1,5,6,13,15
Rule 201 of the Federal Rules of Evidence ................................................................ 5

Other Authorities

N.Y.C. Admin Code §8-107(1)(a)(3) ....................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff alleges two causes of action against his former employer, THE SEGAL GROUP, INC. ("SEGAL") and SEGAL's president and CEO, DAVID BLUMENSTEIN (collectively referred to as "Defendants"), both of which must be dismissed as a matter of law: (1) age discrimination under the New York City Human Rights Law ("NYCHRL") and (2) breach of contract under New York common law. Dismissal of the Complaint is appropriate since plaintiff has failed to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). In support of this motion, Defendants respectfully submit this Memorandum of Law.

The Complaint alleges baseless age discrimination and breach of contract causes of action in connection with plaintiff's signed agreement to voluntarily retire from employment with SEGAL pursuant to a transition agreement, negotiated and executed by plaintiff in March 2021. In addition to the fact that the Complaint lacks any evidence of age-related animus, fatal to the discrimination claim is that there was no adverse employment action or less favorable treatment since plaintiff executed a transition agreement in March 2021 knowingly and voluntarily retiring effective December 31, 2021; and plaintiff has not adequately pled that he was treated less well on the basis of his age after he executed the transition agreement.

With respect to the breach of contract claim, Plaintiff's interpretation of the severance provisions of the Confidentiality/Non-Solicitation Agreement is wrong and contrary to both New York law and common sense. The breach of contract claim fails because the terms of the Confidentiality/Non-Solicitation Agreement provide for severance only where "employment is terminated involuntarily, for a reason other than misconduct or other cause." Since plaintiff executed a transition agreement agreeing to voluntarily retire in return for valuable consideration, there was no involuntary termination and thus no entitlement to severance. Moreover, even if the severance provisions of the Confidentiality/Non-Solicitation Agreement applied to Plaintiff's voluntary retirement – they do not – the Confidentiality/Non-Solicitation Agreement clearly states that severance

1

would "include the requirement that Employee sign a release discharging the Company from all claims." As referenced in the Complaint, Plaintiff refused to sign a release in exchange for severance.

Based on the foregoing, the two causes of action alleged against Defendants are not plausible on their face, or otherwise do not meet the minimum requirements for an acceptable complaint set forth in Tyler v. City of Kingston, 74 F.4th 57, 61 (2d Cir. 2023), *citing* Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

## STATEMENT OF FACTS[1]

Plaintiff is the former Senior Vice President and Chief Financial Officer of SEGAL. See Plaintiff's Complaint annexed to the Declaration of Elizabeth R. Gorman ("Gorman Decl.") as Exhibit "A" (hereinafter "Complaint") at ¶ 1. Plaintiff worked for SEGAL for over 25 years commencing employment in March 1995. Id. at ¶¶ 1 and 33. Plaintiff executed a Confidentiality/Non-Solicitation Agreement between The Segal Company (Eastern States), Inc. and Ricardo M. DiBartolo (hereinafter referred to as "Confidentiality/Non-Solicitation Agreement") on September 27, 2009. Id. at ¶ 86; see also Confidentiality/Non-Solicitation Agreement annexed to the Affidavit of David Blumenstein ("Blumenstein Aff.") as **Exhibit "1."**

In 2016, Defendant David Blumenstein was promoted to President and CEO of SEGAL after working for SEGAL for 28 years commencing employment in 1988. Complaint at ¶ 2; see also Blumenstein Aff. at ¶ 1.

Beginning in 2019, Blumenstein required Plaintiff to include succession planning in all of his goal documents. Complaint at ¶ 43. The Complaint is devoid of any allegation that this requirement was any different for Plaintiff than for any other senior executive reporting to Blumenstein. By 2020, the Complaint alleges that an outside financial consultant was handling Plaintiff's key job duties, and

---

[1] Because this is a motion to dismiss, the allegations in the Complaint are assumed, though not conceded to be true. Defendants deny, and if necessary will strenuously contest, Plaintiff's allegations.

that Defendants had started disregarding Plaintiff's advice, which Plaintiff speculates was the result of Defendants' alleged age discrimination.  Complaint at ¶¶ 43-50.

At the same time, however, Plaintiff admits in his Complaint that Blumenstein had identified numerous concerns with Plaintiff's performance on issues dating back to 2019, including  concerns about SEGAL's cash position for which Plaintiff was responsible as CFO, erroneous financial projections and liquidity models prepared by Plaintiff, Plaintiff's refinancing of a $10 million loan, and Plaintiff's prematurely terminating SEGAL's relationship with its primary bank JP Morgan Chase other than with respect to certain smaller elements.  Complaint at ¶¶ 56-62.  Plaintiff disagreed with Blumenstein's characterization of his performance, and alleges that these concerns were "fabricated" and alleges explanations, excuses, and that none of the concerns identified by Blumenstein were real or Plaintiff's fault or responsibility.  Id.  Ultimately, Plaintiff asserted that Blumenstein had created an "incredibly toxic environment" for him. Id. at ¶ 54.

Following Blumenstein's and Plaintiff's exchanges beginning January 10, 2021 (Id. ¶¶ 53-62), Blumenstein met again with Plaintiff on February 18, 2021, at which meeting he stated to Plaintiff that "it's time to start an orderly transition."  Id. at ¶¶ 63-64.  Plaintiff responded that he was not ready to transition, to which Blumenstein reiterated that it was time to transition. Id. at ¶ 64.  In addition, the Complaint further alleges that Blumenstein told Plaintiff of the terms of the expected transition -- that if he wanted to receive an annual bonus and be paid through December 31, 2021 (*i.e.*, for the next ten months), Plaintiff had to announce his retirement and help transition his duties. Id. at ¶ 65.

Consistent with that discussion, on March 19, 2021, Plaintiff was presented with a Transition Plan and Agreement ("Transition Agreement") for his review and execution.[2]  See Blumenstein Aff. as **Exhibit "2."**  The Transition Agreement provided Plaintiff with a full week, through March 26, 2021, to consider the terms of the agreement, and further advised him that if he chose not to agree to

---

[2]      As discussed below (infra at pp. 5-7), the Court may consider on a motion to dismiss integral documents about which Plaintiff had knowledge and which is directly related to the allegations of the Complaint.

the Transition Agreement, they would "discuss other alternatives, which could include your earlier separation from SEGAL's employ." Id. at p. 3. Plaintiff, a self-described, "vigorous and healthy 74-year-old man" in 2021 when he was presented with the Transition Agreement (Complaint at ¶ 5), agreed to and executed the Transition Agreement on March 22, 2021 – days ahead of the deadline – acknowledging and agreeing to each of its terms. Blumenstein Aff. at **Exhibit "2."** The Transition Agreement provided for Plaintiff's voluntary retirement effective December 31, 2021, in exchange for which Plaintiff was given valuable consideration in the form of continued employment through December 31, 2021 without any reduction or other change in salary and benefits, not being terminated earlier, SEGAL not disparaging him publicly or privately, and transitioning his duties to his successor. See Blumenstein Aff. at **Exhibit "2"** at ¶¶ 1-3 and p. 3. In addition, pursuant to the Transition Agreement, provided Plaintiff signed and did not revoke a separation agreement after his retirement date, he would also receive a gross lump-sum payment. See id. at ¶ 4.

Within two weeks of his execution of the Transition Agreement, on April 6, 2021, SEGAL sent Plaintiff a draft of his retirement announcement for his review. Complaint at ¶¶ 69-71. Plaintiff responded with his edits to the announcement, reiterating that "it [was] not my decision to retire", and therefore revised the announcement instead to say "Together we're sharing the bittersweet news that Ric is retiring at the end of this year after more than 26 years with Segal." Id. at ¶¶ 70-71. The announcement of Plaintiff's retirement with this revision went out on April 7, 2021. Id. at ¶ 72.

Plaintiff remained employed by SEGAL, as per the Transition Agreement, through December 31, 2021, during which time he continued to receive his full salary and benefits. Furthermore, also consistent with the Transition Agreement, at the end of his employment Plaintiff was offered a gross lump sum of $100,000, which Plaintiff rejected. Id. at ¶ 78.

Plaintiff filed this Complaint on July 14, 2023. See Complaint.

## POINT I

## STANDARD OF REVIEW

### A.    The Court May Properly Consider Certain Evidence Outside The Pleading.

As a preliminary matter, it is well-settled that when deciding a motion to dismiss under Fed.

R. Civ. P. 12(b)(6), a court generally may not consult evidence outside the pleadings. However, this

Court, and others in this circuit, have held that they <u>may</u> consider, at their discretion, any documents

that fall into the following categories:

> "(1) facts alleged in the complaint and documents attached to it or incorporated
> in it by reference, (2) documents 'integral' to the complaint and relied upon in
> it, even if not attached or incorporated by reference, (3) documents or
> information contained in defendant's motion papers if plaintiff has knowledge
> or possession of the material and relied on it in framing the complaint, (4)
> public disclosure documents required by law to be, and that have been, filed
> with the Securities and Exchange Commission, and (5) facts of which judicial
> notice may properly be taken under Rule 201 of the Federal Rules of
> Evidence."

<u>Wilson v. Southampton Hosp.</u>, No. 14-CV-5884(ADS)(GRB), 2015 WL 5124481, at *7 (E.D.N.Y.

Aug. 28, 2015); <u>see also</u> <u>Jannazzo v. United States</u>, No. 15-CV-3506(ADS)(AYS), 2016 WL 1452392,

at *5 (E.D.N.Y. Apr. 13, 2016); <u>see also</u> <u>In re Merrill Lynch & Co., Inc.</u>, 273 F. Supp. 2d 351, 356

(S.D.N.Y. 2003), <u>aff'd sub nom.</u> <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161 (2d Cir. 2005). Courts

do not have to accept conclusory statements or legal conclusions couched as factual allegations. <u>Iqbal</u>,

556 U.S. at 678-680.  Nor must a court accept allegations which are contradicted by the exhibits which

the Plaintiff chose to attach to the Complaint or that are incorporated by reference. <u>Sander v. Enerco</u>

<u>Grp., Inc.</u>, No. 21 CV 10684, 2023 WL 1779691 (S.D.N.Y. Feb. 6, 2023) (If a document relied on in

the complaint contradicts allegations in the complaint, the document, not the allegations control, and

the court need not accept the allegations in the complaint as true.)

As set forth by the Second Circuit in <u>Global Network Commc'ns, Inc. v. City of New York</u>,

458 F.3d 150 (2d Cir. 2006), district courts are authorized to consider documents like the Transition

Agreement here, integral to the Complaint but not provided by the Plaintiff.  "Considering such

documents is particularly appropriate in circumstances where a 'contract or other legal documents contain[s] obligations upon which the plaintiff's complaint stands or falls, but which for some reason-usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim-was not attached to the complaint.'" Dale v. L'Oreal USA, Inc., No. 22-CV-00427, 2023 WL 3984345 (E.D.N.Y. June 13, 2023) (citing Global Network Commc'ns, Inc., at 157). In L-7 Designs, Inc. v. Old Navy LLC, 647 F.3d 419 (2d Cir. 2011), the Second Circuit warned plaintiffs that "fail[ing] to include matters of which as pleaders they had notice and which were integral to their claim-and that they apparently most wanted to avoid-may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion. Id. at 422.

**B.**     **The Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6).**

In analyzing the sufficiency of Plaintiff's Complaint under a motion pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, this Court must be guided by the Supreme Court's opinions in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). These cases govern the pleading standard "in all civil actions and proceedings in the United States District Courts," and apply to the pleading of Plaintiffs' discrimination and breach of contract claims. Iqbal, 556 U.S. at 684.

To survive a motion to dismiss, a Complaint must contain sufficient factual allegations that, when accepted as true, "state a claim that is plausible on its face." Twombly, 550 U.S. at 570. To be plausible on its face, a Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a Complaint is plausible on its face, a court first must ferret out and disregard all legal conclusions, labels, formulaic recitations of elements, and conclusory statements. Id. at 681 [emphasis added]; Twombly, 550 U.S. at 55. Then it must determine whether the remaining factual allegations, if taken as true, set forth facts sufficient to allege each element of a claim, and establish a plausible claim for relief. Iqbal, 556 U.S. at 666.

If the remaining factual allegations create no more than speculation that defendant acted unlawfully, then the motion to dismiss should be granted. Id.; Twombly, 550 U.S. at 555. Determining whether a complaint contains sufficient facts to state a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Iqbal plausibility standard applies in conjunction with discrimination pleading standards. See Drew v. Plaza Const. Corp., 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citing Twombly, 550 U.S. at 547); see, e.g., Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Twombly as the applicable standard and affirming dismissal of retaliation claim on a 12(b)(6) motion).

While a Court may grant a dismissal and permit a plaintiff to amend the complaint, a Court should dismiss the complaint with prejudice, if an amendment would be futile. See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Here, Plaintiff knowingly and voluntarily executed a Transition Agreement that extinguishes any discrimination claim related to the end of his employment. Similarly, a plain reading of the contract he now alleges was breached demonstrates that his "voluntary" retirement does not qualify as an "involuntary" termination. The death knell of his claims is the executed Transition Agreement that he intentionally omitted from his Complaint.

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM FOR AGE DISCRIMINATION UNDER THE NYCHRL

**A. Plaintiff's Voluntary Agreement To Retire Pursuant To The Executed Transition Agreement Precludes His Ability To Establish That He Suffered An Adverse Employment Action.**

Under the NYCHRL, it is "an unlawful discriminatory practice for an employer or an agent thereof to…discriminate against such person in compensation or in terms, conditions, or privileges of employment." N.Y.C. Admin Code §8-107(1)(a)(3). "To state a claim for age discrimination under the NYCHRL, Plaintiff must allege that (1) he was a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action/treated differently or less well,

and (4) such treatment occurred under circumstances giving rise to an inference of discrimination. Wetzel v. Systra USA Inc., No. 151707/22, 2022 WL 16564840, at 7 (N.Y. Sup. Ct., Nov. 1, 2022) (citing Askin v. Dep't of Educ. of City of N.Y., 110 A.D.3d 621 (1st Dept. 2013)).

Here, Plaintiff's age discrimination claim fails because he cannot allege and did not suffer any adverse employment action or differential treatment. Rather, Plaintiff was offered the opportunity to voluntarily retire in exchange for valuable consideration and accepted the terms of the Transition Agreement he executed. It is well established under New York law that an employee's voluntary resignation does not amount to an adverse employment action or less favorable treatment. See Ramos v. City of New York, No. 708792/15, 2017 BL 216865, at *2-3 (N.Y. Sup. Ct. May 8, 2017) (plaintiff did not suffer an adverse employment action where he resigned from his employment as opposed to being terminated or demoted); see also Evans v. CNA Ins. Cos., No. 96-CIV. 6775 (DLC), 1997 WL 633453, at *3 (S.D.N.Y. Oct. 10, 1997), aff'd sub nom. Evans v. Cont'l Ins. Co., 165 F.3d 13 (2d Cir. 1998) (dismissing discrimination claim where plaintiff was not discharged but, rather, voluntarily resigned and did not allege a constructive discharge). Plaintiff is precluded from claiming unlawful "termination" where he chose to voluntarily retire when he knowingly and voluntarily executed the Transition Agreement.

Indeed, in Gant v. Brooklyn Developmental Ctr., 307 A.D.2d 307, 762 N.Y.S.2d 507 (2nd Dept. 2003), the New York Appellate Division dismissed a claim under very similar circumstances, finding that a plaintiff's decision to enter into a voluntary agreement to resign precludes the plaintiff from later asserting in litigation that they were adversely impacted from a termination. In Gant, the plaintiff-employee, a 42-year-old female who had been working for the defendant-employer for over a decade, was placed on an administrative leave for failing to report a work-related incident in a timely manner. Two years later, the employee and employer entered into a disciplinary settlement agreement, providing that, among other things, the employee would resign from her job and the employer would provide a neutral employment reference. The employee sued the employer a year later, claiming age

8

and disability discrimination.  The Supreme Court denied the employer's motion to dismiss, but on appeal the New York Appellate Division reversed and dismissed the complaint in its entirety.  Gant, 762 N.Y.S.2d at 308.  The Court held that, as here, the plaintiff was "foreclosed from claiming that her employment was terminated, or that the 'termination' was a result of age or disability discrimination on the part of the defendant," because the plaintiff voluntarily entered into an agreement that indicated she was resigning from her position and plaintiff could not establish that she was coerced into signing the agreement.  Id.

Nor can Plaintiff now allege that he was somehow coerced into signing the Transition Agreement or that it was entered under duress.  It is well-established that in order for a contract to be void for duress, there must be either (1) physical compulsion, (2) threat, or (3) undue influence.  Culmone-Simeti v. New York City Dep't of Educ., No. 17 Civ. 02313 (ER), 2019 WL 2409736, at *4 (S.D.N.Y. June 7, 2019) (internal citations and quotations omitted).  The Complaint makes no allegation of physical compulsion, nor could there be.  See also McNichol v. Falco, No. 16 CV 2119, 2020 WL 5802492, *7 (S.D.N.Y. Sept. 28, 2020) (citing Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir. 1989)).  There is no claim, nor any evidence that the vigorous and healthy Plaintiff was subjected to duress when he executed the Transition Agreement.  Nor does a threat of termination of employment suffice to establish duress.  Indeed, it is equally well-established that neither job insecurity nor threats of termination amount to duress.  See Parker v. Chrysler Corp., 929 F. Supp. 162, 167 (S.D.N.Y. 1996) (finding no threat sufficient to constitute duress or coercion, and therefore no *prima facie* case of discrimination, where plaintiff-employee who agreed to an early retirement was told by defendant-employer that it could not guarantee his future at the company); see also Salesky v. David Peyser Sportswear, Inc., 94 Civ. 9036, 1996 WL 262985 at *2–3 (S.D.N.Y. May 17, 1996) ("threats of termination" of at will employee did not constitute duress).  "The fact that the choice offered is between inherently unpleasant alternatives—resignation or job insecurity—does not by itself establish that a resignation was induced by duress or coercion."  Id. (internal citations omitted).  Furthermore,

"a party who has entered into a contract due to duress must act promptly to repudiate it," which Plaintiff here failed to do – instead choosing to accept the benefits of his continued employment, salary, and benefits for the following nine months under his Transition Agreement. Mathias v. Jacobs, 167 F. Supp. 2d 606, 616 (S.D.N.Y. 2001).

Without an adverse employment action or differential treatment that amounts to more than petty slights or trivial inconveniences, the Complaint fails to state a cause of action for age discrimination warranting dismissal. As set forth above, Plaintiff cannot establish an adverse employment action as a matter of law, and therefore his age discrimination claim, which is based on his "termination," must be dismissed.

**B. The NYCHRL Age Discrimination Cause Of Action Also Fails As A Matter of Law Because The Complaint Fails To Plead Sufficient Facts That Plausibly Give Rise To An Inference Of Discrimination.**

The NYCHRL claim must also be dismissed because it fails to plead facts sufficient to create an inference of discrimination based upon his age. A plaintiff must allege facts giving rise to an inference of discrimination based on age to prevail on a NYCHRL cause of action for age discrimination. See Moore v. Verizon, No. 13-cv-6467, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citing Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93 (2d Cir. 2010)). Of note, "[f]ollowing Iqbal and Twombly, numerous decisions in this Circuit have dismissed discrimination claims where the plaintiff's allegations failed to suggest discriminatory intent." See Durant v. New York City Hous. Auth., No. 12-CV-937, 2013 WL 1232501, at *5 (E.D.N.Y. Mar. 4, 2013). The Complaint alleges three allegations to purportedly state an age discrimination claim: (1) he was replaced by a younger, 49-year-old; (2) that three other older executives retired (ages 73, 65, and 59); and (3) retiring employees were replaced by employees in their 40s and 50s. See Complaint at ¶¶ 26-29 annexed as **Exhibit "A"** to Gorman Decl. All of these theories fail to give rise to a plausible inference of discrimination based upon age. Indeed, the Complaint's suggestion that any time people *in retirement age* (here 73, 65, and 59 year olds) retire, as happens naturally every day in every company in the

country, or that the people who replace those retirees are younger than retirement age, as also naturally happens every day in every company in the country, is somehow surprising or suggestive of age discrimination, is baseless and without any support.

Plaintiff cannot support a plausible inference of age discrimination based upon the age of his alleged replacement (Joseph Fristachi) when the Complaint itself acknowledges that Plaintiff's replacement was the Company's Controller (Complaint ¶ 77), who had been mentored and trained by Plaintiff. Nor does the Complaint allege any facts to suggest that Plaintiff's replacement was similarly situated to him, i.e., that Mr. Fristachi had similar performance concerns raised about him to those raised against Plaintiff. See Blige v. City Univ. of New York, No. 15-cv-08873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims 'where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants.'"); see also Offor v. Mercy Med. Ctr., 167 F.Supp.3d 414, 432 (E.D.N.Y. 2016) (citation omitted). See also Mesias v. Cravath, Swaine & Moore LLP, 106 F.Supp.3d 431, 437 (S.D.N.Y. 2015) (plaintiff's allegation that "a non-Haitian employee could 'borrow' vacation days, while Plaintiff could not" did not give rise to an inference of discrimination where plaintiff did not allege any facts about the non-Haitian colleague, such as whether they worked in the same department or had the same job responsibilities or supervisors).

The Complaint also includes a chart of senior executives (see Complaint, ¶ 28), and suggests that after several executives retired (at the unsurprising ages of 73, 65, and 59) (Complaint, ¶ 28), slightly younger employees replaced them. In fact, that chart serves only to prove that age discrimination does not exist and that there is no plausible basis for any such allegation, as it shows in the clearest of terms that most of SEGAL's senior executive staff is made up of employees in their late 50s, 60s and 70s. See Adia v. MTA Long Island Rail Road Co., No. 02-CV-6140, 2006 U.S. Dist.

11

LEXIS 51045, at *19–20 (E.D.N.Y. July 16, 2006) (dismissing age discrimination claims and explaining that "[i]n order to be probative of discrimination, evidence must show that the employer treated differently employees similarly situated in all material respects. Here, plaintiff has not demonstrated that similarly situated co-workers were treated differently. In fact, from 2000 to 2005, Porcelain promoted two individuals over 40, approved the hire of two individuals over 40 . . . further undermining any inference of discrimination on the basis of age or national origin."); Pasha v. William M. Mercer Consulting, Inc., No. 00 Civ.8362, 2004 U.S. Dist. LEXIS 1226, at *20–21 (S.D.N.Y. Feb. 2, 2004) (dismissing claims of discrimination where facts established that members of the protected class were hired because "in determining whether discrimination was a motivating factor for an adverse employment decision, evidence of an employer's non-discrimination should be considered as well"). Nor is there anything unusual for employees to retire in their 60s and 70s, and it is statistically likely that the people that will replace retiring employees will not be other people at retirement age, but instead by someone in their 40s or 50s. Indeed, given the Complaint's own acknowledgement that SEGAL *retains* older employees, it is a mathematical and statistical certainty that the average age would decline having nothing to do with discrimination. Stated simply, the Complaint does not remotely state a plausible claim of age discrimination.

Based upon the foregoing, dismissal of the NYCHRL age discrimination claim is warranted since there are no factual allegations supporting an inference of discriminatory intent or treatment.

### POINT III

### PLAINTIFF FAILS TO STATE A CLAIM FOR
### BREACH OF CONTRACT UNDER NEW YORK COMMON LAW

**A. The Clear And Unambiguous Severance Provisions To The Confidentiality/Non-Solicitation Agreement Demonstrate Plaintiff Was Not Entitled To 8 Months' Severance And Thus There Was No Breach.**

Plaintiff's second claim that he is owed 8 months' severance pursuant to the Confidentiality/Non-Solicitation Agreement is completely without merit by the terms of that

12

agreement. In order to state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract, (2) that the plaintiff has performed its obligations under the contract, (3) that the defendant failed to perform its obligations under the contract, and (4) that the plaintiff was thereby damaged. Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc., 111 A.D.3d 1374, 1376, 975 N.Y.S.2d 280 (4th Dept. 2013), leave denied, 22 N.Y.3d 864, 2014 WL 1243559 (2014); see also Portal Instruments, Inc. v. Leo Pharma, No. 22 Civ. 09156, 2023 WL 4640163 (S.D.N.Y. July 20, 2023).

When a valid contract exists, the courts look to the four corners of the contract to determine if there has been a breach of its terms. See Greenfield v. Philles Recs., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002). When a contract provision is "clear and unambiguous" courts must uphold its terms. See R/S Assoc. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32, 744 N.Y.S.2d 358, 771 N.E.2d 240, re-argument denied, 98 N.Y.2d 693, 747 N.Y.S.2d 411, 775 N.E.2d 1291 (2002); see also Portal Instruments, Inc., at *2. The Complaint's allegations fail to establish that Defendants breached any provision of the Agreement.

It is well-settled that "to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." Portal Instruments, Inc., at *2, (citing Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013)). "The Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." Id. (citing Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021)). "[A]t the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." Id. (quoting Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152 (2d Cir. 2016) (citing Eternity Glob. Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 177 (2d Cir. 2004)). "A contract is unambiguous, however, if the contract language has a definite and precise meaning and concerning which there is no reasonable basis for a

13

difference of opinion." Id. (cleaned up). Ambiguity is analyzed by "read[ing] the integrated agreement as a whole"—"[i]f the document as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." Id. (quoting Lockheed Martin Corp. v. Retail Holdings, 639 F.3d 63, 69 (2d Cir. 2011)).

Here, the clear terms of the agreement confirm that Plaintiff cannot state a breach of contract claim upon which relief may be granted. First, the Confidentiality/Non-Solicitation Agreement makes clear that it applies only "in the event Employee's employment is **terminated involuntarily**, for a reason other than misconduct or other cause, Employee will be entitled to receive a severance benefit based on the following schedule…." Id. at p. 3, last paragraph. Here, as discussed at length above, Plaintiff was never **terminated involuntarily**. Rather, he voluntarily executed a Transition Agreement where he agreed to transition out of his position as Senior Vice President and Chief Financial Officer with SEGAL commencing April 1, 2021 and to work in developing an announcement of his **retirement** and to a transition plan in effect as of April 1, 2021 to be complete with his **retirement** on December 31, 2021. See Blumenstein Aff., **Exhibit "2"** at p. 1, first unnumbered paragraph.

Furthermore, the Confidentiality/Non-Solicitation further provides that "[s]everance pay will be provided under the terms and conditions of the Severance Pay Plan, which include the **requirement** that Employee sign a release discharging the Company from all claims." See Blumenstein Aff., **Exhibit "1"** at p. 4. The Complaint does not allege that Plaintiff signed any such release – indeed, if he had, his claims would have been precluded on the basis of such release. To the contrary, the Complaint acknowledges that SEGAL offered Plaintiff the lump sum payment of $100,000 in accordance with the Transition Agreement, and Plaintiff declined to accept it. Complaint at ¶ 78.

As such, for each of the reasons set forth above, the Complaint fails to state a claim as a matter of law, and the second cause of action must be dismissed.

B. **The Breach of Contract Claim Asserted Against David Blumenstein, Individually Should Be Dismissed As Mr. Blumenstein Was Not A Signatory To The Confidentiality/Non-Solicitation Agreement.**

In his Complaint, Plaintiff alleges that in 2009, Defendants entered into a binding contract, the Confidentiality/Non-Solicitation Agreement whereby Defendants would pay Plaintiff severance. See Complaint ¶¶ 79 and 86. However, the Confidentiality/Non-Solicitation Agreement was executed on behalf of SEGAL by Mr. LoCicero. See Blumentein Aff., **Exhibit "1"** at p. 5. Defendant David Blumenstein was not and is not a party to the contract in his individual capacity and thus is not a proper party. It is of course black letter law that under New York law, a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract." CityR Grp. Holdings LLC v. Foresite Realty Mgmt., LLC, No. 17 Civ. 7850, 2019 WL 1437519, at *3 (S.D.N.Y. Mar. 29, 2019). As such the breach of contract claim asserted against David Blumenstein individually should be dismissed.

## CONCLUSION

For each of the reasons set forth above, Defendants respectfully submit that Plaintiff's Complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), Defendants' motion to dismiss should be granted, and the Complaint should be dismissed in its entirety and with prejudice.

Dated:  Woodbury, New York
         October 18, 2023

                    MILBER MAKRIS PLOUSADIS
                    & SEIDEN, LLP

          By: _____
                    Elizabeth R. Gorman
                    Attorneys for Defendants
                    1000 Woodbury Road, Suite 402
                    Woodbury, New York 11797
                    (516) 712-4000
                    (516) 712-4013 Facsimile

Our File No.: 420-21153
egorman@milbermakris.com

TO:    Christine Hogan, Esq.
        Dorf & Nelson LLP
        Attorneys for Plaintiff
        555 Theodore Fremd Avenue
        Rye, NY 10580
        P.: 914-381-7600
        F.: 914-381-7608
        chogan@forflaw.com