UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO DIBARTOLO,

                Plaintiff,

      -against-


THE SEGAL GROUP, INC. and DAVID
BLUMENSTEIN, *in his individual and official
capacities*,

              Defendants.

**No. 1:23-cv-06095(JHR)**

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

*Of Counsel:*
 Christine L. Hogan

**DORF NELSON & ZAUDERER LLP**
555 Theodore Fremd Avenue
Rye, New York 10580
(914) 381-7600
chogan@dorflaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

I.    PRELIMINARY STATEMENT ...................................................... 1

II.   FACTUAL BACKGROUND.......................................................... 2

III.  ARGUMENT ............................................................................. 4

     A. The Applicable Review Standard for
        NYCHRL Discrimination Cases Is Minimal
        under FRCP 12(b)(6) ............................................................. 4

     B. Defendants' Motion to Dismiss Plaintiff's
        NYCHRL Age Discrimination Claim Should
        Be Denied Because Plaintiff Has Given
        Defendants Fair Notice of His Claim.................................... 5

          a. The Court May Not Properly Consider the
             Transition Plan (And Especially the Random Notes
             Appended Thereto) ........................................................5

          b. Even If the Court Were to Consider the Transition
             Plan, It Does Not Preclude Plaintiff's Ability to
             Plead an Adverse Action under the NYCHRL,
             Which Is Not Even Required under Applicable Law ................... 8

          c. Plaintiff Also Pleads Enough Facts to Provide
             Defendants with Sufficient Notice on the Basis by
             Which Plaintiff Brings His Age Discrimination
             Claim under the NYCHRL ..........................................12

     C. Defendants' Motion to Dismiss Plaintiff's Breach of Contract
        Claim Should Be Denied Because Additional Extrinsic
        Evidence Is Needed and Plaintiff Sufficiently Pleads
        Involuntary Termination and Breach .................................15

IV.   CONCLUSION ..............................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Adia v. MTA Long Island R.R. Co.*,
    2006 WL 2092482 (E.D.N.Y. July 26, 2006) ............................................................14

*Alexander v. N.Y. City Dep't of Educ.*,
    2020 WL 7027509 (S.D.N.Y. Nov. 30, 2020) ............................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................4

*Blige v. City Univ. of N. Y.*,
    2017 WL 498580 (Jan. 19, 2017), *R&R adopted*,
     2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017) ......................................................13

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008) .......................................................................................5

*Brands Within Reach, LLC v. Belvoir Fruit Farms Ltd.*,
    2022 WL 4585445 (S.D.N.Y. Sept. 29, 2022) .........................................................16

*Evans v. CNA Ins. Cos.*,
    1997 WL 633453 (S.D.N.Y. Oct. 10, 1997), *aff'd sub nom.*,
    *Evans v. Cont'l Ins. Co.*, 165 F.3d 13 (2d Cir. 1998) ...........................................12

*Gant v. Brooklyn Developmental Ctr.*,
    307 A.D.2d 307, 762 N.Y.S.2d 507 (2d Dep't 2003)……………………………….9, 10

*Gorzynski v. JetBlue Airways Corp.*,
    596 F. 3d 93 (2d Cir. 2010)........................................................................................13

*Grand Income Tax, Inc. v. HSBC Taxpayer Fin. Servs., Inc.*,
    2008 WL 5113646 (E.D.N.Y. Nov. 25, 2008)..........................................................10

*Green v. Town of E. Haven*,
    952 F.3d 394 (2d Cir. 2020).......................................................................................12

*Handlowitch v. Verizon Commc'ns, Inc.*,
    2019 WL 1789708 (S.D.N.Y. Apr. 24, 2019)...........................................................13

*Harper v. N.Y. City Hous. Auth.*,
    673 F. Supp. 2d 174 (S.D.N.Y. 2009)……………………………………………... 4, 5, 8

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007).........................................................................................5

*Lee v. L. Offs. of Kim & Bae, P.C.*,
    161 A.D.3d 964, 77 N.Y.S.3d 676 (2d Dep't 2018) .................................................16

*Littlejohn v. City of N.Y.*,
795 F.3d 297 (2d Cir. 2015) ……………………………………………………4, 5, 15

*Lopez v. S.B. Thomas, Inc.*,
831 F.2d 1184 (2d Cir. 1987)............................................................................11

*Mesias v. Cravath, Swaine & Moore LLP*,
106 F. Supp. 3d 431 (S.D.N.Y. 2015)..............................................................13

*Offor v. Mercy Med. Ctr.*,
167 F. Supp. 3d 414 (E.D.N.Y. 2016), *aff'd in part, vacated in part, remanded*,
676 F. App'x 51 (2d Cir. 2017) ........................................................................13

*Parker v. Chrysler Corp.*,
929 F. Supp. 162 (S.D.N.Y. 1996) ...................................................................10

*Pasha v. William M. Mercer Consulting, Inc.*,
2004 WL 188077 (S.D.N.Y. Feb. 2, 2004), *aff'd sub nom.*,
135 F. App'x 489 (2d Cir. 2005) ......................................................................14

*Peterson v. Wells Fargo Bank, N.A.*,
2023 WL 4363239 (2d Cir. July 6, 2023)...........................................................7

*Ramos v. City of N.Y.*,
2017 BL 216865 (N.Y. Sup. Ct. May 8, 2017)..................................................11

*Reiver v. Murdoch & Walsh, P.A.*,
625 F. Supp. 998 (D. Del. 1985) ......................................................................10

*Rosen v. N.Y. City Dep't of Educ.*,
2019 WL 4039958 (S.D.N.Y. Aug. 27, 2019) ...................................................14

*Ryan v. Kellogg Partners Institutional Servs.*,
19 N.Y.3d 1, 968 N.E.2d 947, 945 N.Y.S.2d 593 (N.Y. 2012) ...........................10

*Salesky v. David Peyser Sportswear, Inc.*,
1996 WL 262985 (S.D.N.Y. May 17, 1996) .....................................................10

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
867 F.3d 298 (2d Cir. 2017)...............................................................................8

*Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*,
936 F. Supp. 2d 376 (S.D.N.Y. 2013) ..............................................................16

*U.S. ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021)…………………………………………… 5, 6, 7

*Walsh v. Scarsdale Union Free Sch. Dist.*,
375 F. Supp. 3d 467 (S.D.N.Y. 2019)...............................................................14

**<u>Statutes, Rules, and Other Authorities</u>**

FRCP 11(b), (c) ........................................................................................6

FRCP 12(b)(6) …………………………………………………………………1, 4, 5

FRCP 56(f) ..............................................................................................7

*Retirement*, BLACK'S LAW DICTIONARY (11th ed. 2019). .........................................9

Plaintiff Ricardo DiBartolo, by and through his undersigned counsel, Dorf Nelson & Zauderer LLP, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  PRELIMINARY STATEMENT

Plaintiff was an essential part of Defendant Segal's success for over 25 years.  After being promoted to President and CEO, however, Defendant David Blumenstein started pushing Plaintiff to retire despite his incredible past accomplishments and continued excellence. When Plaintiff made it clear that he was not ready to retire, Blumenstein shifted Plaintiff's work to a significantly younger and less experienced outside consultant, second-guessed his advice and counsel, fabricated performance issues where none existed, terminated him quietly, and then created a false narrative that it was Plaintiff's decision – not his – to retire.  Blumenstein did this all without the knowledge or consent of the full Board of Directors, in order to hide his age-based animus.  In the meantime, Blumenstein quietly forced the retirement of others and replaced older executives with significantly younger ones, causing the average age of Segal executives to decline.

In a poor attempt to get this case dismissed, Defendants play fast and loose with the standard for introducing extrinsic evidence on a FRCP 12(b)(6) motion. Specifically, Defendants want the Court to consider (1) a written transition plan that Defendants coerced Plaintiff into signing – after giving him notice of his definite, imminent termination – which Plaintiff only signed because Defendants otherwise would not have paid his already-earned $200,000+ bonus from the prior year; (2) random notes appended to the transition plan, furtively made to seem as if they were a part of the plan itself; and (3) only a portion of the written terms upon which Plaintiff's claim for severance pay depends.  None of these documents meet the standard for permitting consideration of extrinsic evidence.

Bottomline, Plaintiff more than sufficiently states a claim for both age discrimination and breach of contract, and the Court should deny Defendants' motion to dismiss in full.

## II.     FACTUAL BACKGROUND

Plaintiff is the former Senior Vice President, Chief Financial Officer ("CFO"), of Defendant Segal.  (ECF No. 1, ¶ 1; hereinafter, "Compl.").  After 25-plus years of dedicated service and excellent performance, Blumenstein, newly appointed President and CEO, unceremoniously fired Plaintiff – the Company's oldest executive – at age 74.  (Compl. ¶¶ 5, 67).  Segal replaced Plaintiff with Joseph Fristachi, Segal's former Controller.  Fristachi was 49 years old. (Compl. ¶ 5).

Blumenstein's decision to terminate Plaintiff was a part of a larger age-based plan to hand the Company "off to the next generation as a stronger, better version of Segal."  (Compl. ¶ 23). Blumenstein's decision-making led to the Company forcing the retirement of its oldest executives and hiring its youngest executives, leading to a significant shift in the average age of Segal's executives. (Compl. ¶¶ 25-30).

Initially, Blumenstein urged Plaintiff to voluntarily retire.  (Compl. ¶¶ 42-43).  He also repeatedly would ask Plaintiff when he was going to retire and started requiring succession planning in all of Plaintiff's goal documents.  (Compl. ¶ 43).  In 2019, when Plaintiff made it clear that he was not ready to retire, Blumenstein started taking away Plaintiff's key CFO duties and pushing them to David Sturdee, a significantly younger and less experienced outside financial consultant. (Compl. ¶ 44).  Blumenstein also started disregarding Plaintiff's advice and counsel and cut him out of finance-related decision-making, despite his role as CFO and his fiduciary duty to the Company to ensure its financial preservation. (Compl. ¶¶ 46-50).

In January 2021, Blumenstein escalated his discriminatory actions against Plaintiff when he issued Plaintiff a written record of fabricated, pretextual performance concerns. (Compl. ¶¶ 56-62). Then, during a meeting on February 18, 2021, Blumenstein gave Plaintiff notice of his definite, imminent termination. (Compl. ¶¶ 63-67). He told Plaintiff that unless Plaintiff helped transition his duties to a successor, Plaintiff would lose out on salary through the end of 2021 and his already-earned bonus from fiscal year 2020. (Compl. ¶ 65). In other words, Plaintiff had to choose between being terminated immediately or being terminated at the end of the year. (Compl. ¶¶ 65-67). This wasn't an actual choice – of course, Plaintiff selected the option that allowed him to be paid his earned bonus (and nine additional months of salary). (Compl. ¶¶ 65-67).

After the February 18th meeting, Segal created a public narrative that Plaintiff had decided to retire voluntarily, seemingly to avoid having to answer tough questions about why the Company decided to terminate a productive, well-respected employee and the longest standing member of the executive team. (Compl. ¶¶ 68-71). Plaintiff, however, continued to object to Segal's contrived narrative, making it clear that his departure was being forced. (Compl. ¶¶ 68-71).

When Plaintiff's retirement announcement went out on April 7, 2021, it was met with widespread dismay. (Compl. ¶¶ 72, 74). Many people, including members of the Board of Directors, called Plaintiff to express their surprise and disappointment that he was retiring, indicating that Blumenstein had not been honest about Plaintiff's termination with the Board as well. (Compl. ¶ 74).

There would have been no reason for this subterfuge if Plaintiff was being legitimately terminated for performance reasons. (Compl. ¶ 75). However, Plaintiff's termination was not legitimate – it was just the next step towards Blumenstein's professional goal of removing older employees and handing off Segal "to the next generation." (Compl. ¶ 75).

After providing notice of termination, Defendants offered Plaintiff a payment of $100,000 in exchange for his silence and a release of all claims that Plaintiff had against Defendants. (Compl. ¶ 78). This was yet another example of Defendants' mistreatment and disrespect for Plaintiff and his long-tenured role at Segal because in a 2009 Confidentiality/Non-Solicitation Agreement, Defendants promised Plaintiff severance pay in the amount of 8 months' salary (i.e., $230,000) upon his separation of employment. (Compl. ¶ 79). Defendants, however, have refused to offer Plaintiff his contractually owed severance pay and have offered $100,000 – less than half of what he is owed. (Compl. ¶ 80).

Accordingly, Plaintiff brings a breach of contract claim based on Defendants' violation of the Confidentiality/Non-Solicitation Agreement, in addition to an age discrimination claim pursuant to the New York City Human Rights Law ("NYCHRL").

## III. ARGUMENT

### A. The Applicable Review Standard for NYCHRL Discrimination Cases Is Minimal under FRCP 12(b)(6)

Defendants bring their motion pursuant to FRCP 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage in the case, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d 2015).

Moreover, when no discovery has taken place, a plaintiff is "not required to plead sufficient facts to establish a prima facie case" under the *McDonnell Douglas* burden-shifting framework to survive a 12(b)(6) motion. *Harper v. N.Y. City Housing Auth.*, 673 F. Supp. 2d 174, 179 (S.D.N.Y. 2009) (citing *Boykin v. KeyCorp*, 521 F. 3d 202, 212 (2d Cir. 2008)). Instead, a plaintiff "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

it rests.'" *Harper*, 673 F. Supp. 2d at 178 (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)); *Littlejohn*, 795 F.3d at 311 ("The facts required by *Iqbal* . . . need only give plausible support to a minimal inference of discriminatory motivation.").

For the reasons set out below, Plaintiff has pled sufficient facts to survive Defendants' motion to dismiss.

### B. Defendants' Motion to Dismiss Plaintiff's NYCHRL Age Discrimination Claim Should Be Denied Because Plaintiff Has Given Defendants Fair Notice of His Claim

#### a. The Court May Not Properly Consider the Transition Plan (and Especially the Random Notes Appended Thereto)

Defendants waste three pages arguing that the March 19, 2021 Transition Plan and Agreement (ECF No. 12-2, at 2-4; hereinafter, "Transition Plan") precludes Plaintiff's ability to establish an adverse action. (ECF No. 13, at 5-8; hereinafter, "D. Br."). Neither the Transition Plan nor the random three pages of notes (from an unidentified person) attached thereto (ECF No. 12-2, at 5-7; hereinafter, "Notes"), however, can be considered on this motion to dismiss.

In proffering their broad version of the standard of review for extrinsic evidence, Defendants rely on out-of-district caselaw citing outdated Second Circuit precedent. (D. Br. at 5). Per recent Second Circuit precedent, on a motion to dismiss under FRCP 12(b)(6), a Court may only consider three categories of information: "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *See U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quotations omitted).

Since the Complaint did not reference the Transition Plan or Notes or attach either thereto, Defendants must be attempting to get them in front of the Court via the third category – incorporation by reference. Neither the Transition Plan nor the Notes, however, are "incorporated by reference" anywhere in the Complaint – defined in the *Foreman* case as either "integral" or

"*relie[d] heavily* upon its terms and effect." *Id.* (quotations omitted) (emphasis added). "[M]ere notice or possession is not enough." *Id.* (citation cleaned up) (emphasis added).

As an initial matter, Defendants' decision to append the Notes to the back of the Transition Plan is sanctionable.[1] Despite trying to make it appear as such, the Notes are <u>not</u> a part of the Transition Plan. Moreover, based on the reference to meetings on April 2nd and 5th in the Notes, they were drafted <u>after</u> Plaintiff signed the Transition Plan. (Notes, at 5). The only reason Defendants would have appended them is to harass Plaintiff and improperly attempt to get out-of-context information in front of the Court. There is certainly nothing in the Complaint that would support any argument that the Notes are integral to it or were relied heavily upon in the its drafting.

With respect to the Transition Plan itself, in reviewing the post-notice of termination allegations of the Complaint, it is plain that the Transition Plan was also not incorporated by reference in the Complaint. Specifically, the Complaint first describes how Blumenstein gave Plaintiff notice of his termination during their February 18, 2021 meeting, and the strings attached to continuing his salary and paying out his already-earned 2020 bonus. (Compl. ¶¶ 63-67). The Transition Plan is not integral to or relied heavily upon with those allegations. Then, the Complaint explains the wordsmithing that Plaintiff had to do with Erin Burns, Vice President of Content at Defendant Segal, with respect to his retirement announcement, to make it clear that it was <u>not</u> Plaintiff's decision to retire. (Compl. ¶¶ 68-71). The Transition Plan is not integral to or relied heavily upon with those allegations.

Next, the Complaint recalls Plaintiff's colleagues' shock when that retirement announcement went out. (Compl. ¶¶ 72-75). The Transition Plan is not integral to or relied heavily

---

[1] The Court has full discretion to require Defendants "to show cause why conduct specifically described in the order has not violated Rule 11(b)." FRCP 11(c)(3).

upon with those allegations. The Complaint then provides additional proof of age discrimination – Plaintiff's replacement with a 49-year-old colleague. (Compl. ¶¶ 76-77). The Transition Plan is not integral to or relied heavily upon with those allegations. And finally, the Complaint ends with factual allegations related to Defendants' breach of contract with respect to paying Plaintiff severance. (Compl. ¶¶ 78-80). Again, the Transition Plan is not integral to or relied heavily upon with those allegations.

Accordingly, the Court should not consider the Transition Plan or the random Notes appended thereto on this motion to dismiss. This is particularly imperative because if the Court were to consider either or both, it would have to convert the motion to one for summary judgment. *See Foreman*, 19 F.4th at 107.[2] This conversion requirement is "strictly enforced whenever a district court considers extra-pleading material in ruling on a motion to dismiss." *Id.* at 108. Moreover, failing to convert the motion is tantamount to reversible error, because it prevents the parties from conducting necessary discovery into the extrinsic evidence placed at issue. *Id.* at 107, 108; *Peterson v. Wells Fargo Bank, N.A.*, 2023 WL 4363239, at *2 (2d Cir. July 6, 2023). As an example, since the Transition Plan is ambiguous as to whether Plaintiff's retirement was voluntary, *see infra* Section III(B)(b), additional discovery – outside the four corners of the Transition Plan itself – is necessary to determine the intent of the parties in entering into such a Plan.

For all these reasons, the Court should not consider the Transition Plan or the random Notes appended thereto in deciding this motion to dismiss.

---

[2] If the Court converts this motion to a motion for summary judgment, Plaintiff respectfully requests that the Court allow for discovery and then the opportunity for Plaintiff to submit additional evidence pursuant to FRCP 56(f).

**b. Even If the Court Were to Consider the Transition Plan, It Does Not Preclude Plaintiff's Ability to Plead an Adverse Action under the NYCHRL, Which Is Not Even Required under Applicable Law**

As stated above, the Court should not consider the Transition Plan in deciding whether to grant Defendants' motion to dismiss. However, even if the Court did consider it, the outcome would be the same – denial of Defendants' motion.

First, even if the Court considers the Transition Plan, it is not the *fait accompli* that Defendants wish it to be. As stated above, Plaintiff does not have to establish an adverse action in order to survive the motion to dismiss. *Harper*, 673 F. Supp. 2d at 179. Even if he did, however, Plaintiff alleges more than just a termination as an adverse action – he also alleges a pretextual negative performance review, a material change of duties while working as a CFO, and a reduction in independent judgment and discretion. These are sufficient to survive a motion to dismiss under the liberal standard of the NYCHRL. *See Alexander v. N.Y. City Dep't of Educ.*, 2020 WL 7027509, at *4 (S.D.N.Y. Nov. 30, 2020) ("Under the NYCHRL, meanwhile, the adverse employment action need not be materially adverse to be actionable.").

Moreover, Plaintiff is not just alleging his eventual termination – what Defendants improperly cast as a voluntary resignation – as an adverse action. He is also alleging that Blumenstein's <u>notice</u> of his imminent termination during the February 18th meeting was an adverse action. (Compl. ¶¶ 63-65). This is also sufficient. *See Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 305-06 (2d Cir. 2017) ("Accordingly, we conclude that the notice of termination itself constitutes an adverse employment action . . . .").

Second, Defendants are only trying to use the Transition Plan as proof that Plaintiff's termination was not an adverse action – they are not trying to enforce the Plan's terms vis-à-vis a breach of contract action or otherwise. (Def. Br. at 5-6). That is why Defendants' arguments

regarding duress (D. Br. at 14-15) are irrelevant; Plaintiff does not have to plead facts that the Transition Plan is voidable for the case to move forward because it is limited in effect. There is no general release and no agreement that Plaintiff would not challenge his termination in a lawsuit or otherwise. There is also no provision stating that the Transition Plan represents an entire agreement between the parties. And, the parties did not enter the Plan to establish that Plaintiff was <u>voluntarily</u> retiring – in fact, the use of the term "retirement" in the Transition Plan does not even imply voluntariness. Per Black's Law Dictionary, "retirement" means "[t]ermination of one's own employment or career, esp. upon reaching a certain age or for health reasons; . . . may be voluntary <u>or involuntary</u>." *Retirement*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

Simply put, the Transition Plan laid out what each party was to generally expect from March 22, 2022 (date of execution) through December 31, 2022 (Plaintiff's forced termination date). That's it. The Transition Plan can be enforceable and still not preclude Plaintiff from bringing his age discrimination case here. This is why Defendants' cited case, *Gant v. Brooklyn Developmental Ctr.*, 307 A.D.2d 307, 762 N.Y.S.2d 507 (2d Dep't 2003), is imminently distinguishable. In that case, unlike here, the plaintiff signed a settlement agreement with a release, and waived her right to bring a lawsuit. *Id.* at 308.[3]

In any event, Plaintiff does allege sufficient facts for the Court to find that the Transition Plan is voidable for duress. Defendants completely ignore Paragraphs 65-67 of the Complaint,

---

[3] Defendant's underlying brief in the *Gant* case, 2003 WL 23322694, at *8-9, makes clear that the settlement agreement contained a release. By contrast, the Transition Plan contemplates that a separation agreement could be negotiated: "Provided you sign and do not revoke a separation agreement which will be provided to you on or about your Termination Date . . . you will receive a gross lump-sum payment in an amount to be determined." (Transition Plan ¶ 4). Since a subsequent separation agreement was needed, clearly the parties did not contemplate that Plaintiff was releasing an age discrimination or any other claim by entering into the Transition Agreement.

which make clear that Plaintiff had to sign the Transition Plan in order for him to be paid through end of 2021 (instead of being fired immediately) and to receive his bonus from the prior fiscal year – an amount greater than $200,000 – that had already been earned and thus was owed to him.[4] None of Defendants' cited cases involve notice of imminent, definitive termination and threats to not pay hundreds of thousands of dollars already owed to the plaintiff, which is tantamount to pleading duress.  *See Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1014 (D. Del. 1985) ("[T]hreats of termination of an at-will employee to obtain a release of already accrued benefits could form the basis of an action predicated on economic duress."), *cited with approval in Grand Income Tax, Inc. v. HSBC Taxpayer Fin. Servs., Inc.*, 2008 WL 5113646, at *6 (E.D.N.Y. Nov. 25, 2008).

For this reason, Defendants' cited cases on this point are distinguishable.  *Gant*, *supra*, does not help Defendants for a second reason because there, the plaintiff "voluntarily entered into an agreement . . . [and] produced no evidence to indicate that she was coerced into the agreement." 307 A.D.2d at 308.  *Parker v. Chrysler Corp.* is distinguishable because in that case – on a motion for summary judgment, not even a motion to dismiss – the court found insufficient evidence of duress because the plaintiff was not threatened, but simply made aware that, as an at-will employee, he did not have job security and as a result, knowingly signed up for a voluntary retirement package.  929 F. Supp. 162, 167 (S.D.N.Y. 1996).  And finally, in *Salesky v. David Peyser Sportswear. Inc.* – also not a motion to dismiss – the court did not find duress even though the plaintiff was threatened with job loss because there, plaintiff was required to sign a new commissions agreement and changing an at-will employee's compensation *going forward* is

---

[4] *See Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 968 N.E.2d 947, 956, 945 N.Y.S.2d 593 (N.Y. 2012) (holding Defendants liable for nonpayment because "Ryan's bonus had been earned and was vested before he left his job at Kellogg").

lawful. 1996 WL 262985, at *2 (S.D.N.Y. May 17, 1996). Here, Plaintiff was given notice of imminent termination and threatened with the loss of wages that he already earned (unlawful). (Compl. ¶ 65).

Moreover, in taking all reasonable inferences in his favor, the Transition Plan plausibly supports Plaintiff's allegations that his retirement was involuntary, i.e., that Plaintiff was constructively discharged and thus suffered an adverse action. For example, the Transition Plan does not indicate that Plaintiff wanted to retire. In fact, quite the opposite. Per the terms of the Plan, (1) Plaintiff was *required* to work with others to develop his own retirement announcement, (2) Plaintiff's "Termination Date will be December 31, 2021," and, most significantly, (3) if Plaintiff did not sign, Defendants would terminate him sooner. (Transition Plan ¶¶ 1, 3, 4).

This is in line with what Blumenstein told Plaintiff in their February 18, 2021 meeting, that "in order for him to receive his bonus from the previous fiscal year and be paid until the end of 2021, Plaintiff had to announce his retirement and help transition his duties to a successor." (Compl. ¶ 65). Simply put, the Transition Plan supports the allegations in the Complaint – that Plaintiff agreed to the retirement because he had no real choice in the matter, i.e., he was constructively discharged. These facts are more than sufficient to allege a plausible adverse action for purposes of this motion. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (holding that plaintiff had raised a genuine issue of fact "as to whether he was constructively discharged when, as he alleges, Hunsberger told him he would be fired at the end of the 90-day probationary period no matter what he did").

Plaintiff's cited cases on this point are distinguishable. In *Ramos v. City of New York*, the plaintiff voluntarily resigned after illness. 2017 BL 216865, at *2-3 (N.Y. Sup. Ct. May 8, 2017) (not available on Westlaw). In *Evans v. CNA Ins. Cos.*, the plaintiff resigned, signed a release, and

accepted a new offer at the same employer. 1997 WL 633453, at *3 (S.D.N.Y. Oct. 10, 1997), *aff'd sub nom. Evans v. Cont'l Ins. Co.*, 165 F.3d 13 (2d Cir. 1998). In both cases, there were no allegations to support a constructive discharge.

The Second Circuit's opinion in *Green v. Town of E. Haven*, 952 F.3d 394, 409 (2d Cir. 2020), is instructive here. There, the district court had granted summary judgment because it determined that plaintiff had not made out a prima facie case for an adverse action because it determined that plaintiff had retired. *Id.* at 396. The Second Circuit, however, vacated the judgment. *Id.* The Second Circuit held that there were "genuine issues of fact as to whether a reasonable person in Green's shoes would have felt compelled to retire." *Id.* In so finding, the Court highlighted that "[i]t hardly need[s] be said that the determination of whether it was objectively reasonable for an employee to feel compelled to resign in order to avoid being fired requires at least an examination of the information possessed by the employee." *Id.* at 405. In other words, this is not even a question to be decided on a motion for summary judgment, much less a motion to dismiss, as is the case here.

Simply put, it is more than plausible that Defendants forced Plaintiff's retirement, i.e., terminated him. It is unavailing to argue that because Plaintiff signed a Transition Plan after he was threatened with immediate termination – so that he could continue his work at Segal for as long as possible and so that he could be paid his already-earned 2020 bonus – he has not been subjected to an adverse action. The Court should deny Defendants' motion to dismiss Plaintiff's age discrimination claim.

    **c. Plaintiff Also Pleads Enough Facts to Provide Defendants with Sufficient Notice of the Basis by Which Plaintiff Brings His Age Discrimination Claim under the NYCHRL**

As a final way to attack the Complaint, Defendants claim that Plaintiff fails to "plead facts sufficient to create an inference of discrimination based upon his age." (D. Br. at 10). Defendants' argument boils down to cherry picking certain allegations, pretending those are the only ones that exist, and then claiming that those allegations alone are insufficient. (D. Br. at 10-12). To be clear, Plaintiff's age discrimination case rests on far more than Defendants claim, and his allegations more than meet the minimal standard required at this motion to dismiss stage.

First, Plaintiff alleges that Defendants replaced him (age 74) with an employee about 25 years his junior (age 49). (Compl. ¶ 5).[5] This alone is sufficient to support an age discrimination claim, especially under the NYCHRL. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) ("This burden is not a heavy one . . . and it is met here, as Gorzynski was over forty years old, was undisputedly qualified for her position, was fired, and was then replaced by a woman in her twenties."). Defendants cited cases, *Blige v. City Univ. of N.Y.*, 2017 WL 498580, at *9 (Jan. 19, 2017), *R&R adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017), *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 432 (E.D.N.Y. 2016), *aff'd in part, vacated in part, remanded*, 676 F. App'x 51 (2d Cir. 2017), and *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015), are inapposite because they focus on the legal analysis related to comparators, not replacements. Plaintiff does not have to allege facts to suggest Fristachi was similarly situated to him because he is not suggesting that Fristachi is his comparator.

Second, Plaintiff alleges that Defendants, led by Blumenstein, have engaged in a pattern of replacing older employees with significantly younger ones, which has caused the average age of Segal executives to decline. (Compl. ¶¶ 26-30). This is also compelling evidence of age

---

[5] Defendants improperly try to introduce facts into the Court's analysis here that are not a part of the Complaint. Specifically, they state that Plaintiff "mentored and trained" Fristachi. As explained in Section III(B)(a) *supra*, the Court should not consider information extrinsic to the pleadings.

discrimination.  *See Handlowitch v. Verizon Commc'ns, Inc.*, 2019 WL 1789708, at *4 (S.D.N.Y. Apr. 24, 2019) ("Plaintiff has even alleged that Defendant engaged in a pattern of replacing older employees with significantly younger employees.").

Defendants try to obscure this by claiming that it is natural that people who retire are replaced by younger employees.  (D. Br. at 10-12).  Plaintiff, however, is alleging much more than that.  He is claiming that certain of the oldest executives were forced to "retire" under Blumenstein; that other older, non-retiring executives were replaced by significantly younger employees; and that the executive team's average age significantly decreased from 2016 through present on account of Blumenstein's bias.[6]  (Compl. ¶¶ 26-30).  Defendants' cited cases, *Adia v. MTA Long Island R.R. Co.*, 2006 WL 2092482, at *7 (E.D.N.Y. July 16, 2006), and *Pasha v. William M. Mercer Consulting Inc.*, 2004 WL 188077, at *7 (S.D.N.Y. Feb. 2, 2004), *aff'd sub nom.*, 135 F. App'x 489 (2d Cir. 2005), are inapposite because they are summary judgment motion cases that included evidence that Defendants hired a significant number of employees near in age to the plaintiff, which is not the case here.

Third, Plaintiff alleges that Defendant Blumenstein (the decision-maker) has made age and retirement-related comments on many occasions, and in particular, directly related to, and at the same time as, his giving Plaintiff notice of his imminent termination (i.e., not as a "stray remark").  (Compl. ¶¶ 2, 23, 42-43, 63-65).  These allegations also support an inference of age discrimination.  *See Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 486 (S.D.N.Y. 2019) (finding that the plaintiff sufficiently pleaded an age discrimination claim, in part, because the plaintiff's supervisor "suggested numerous times that [plaintiff] should 'consider' retirement"); *Rosen v. N.Y.*

---

[6] Logic dictates that if there were no age-based decision-making, the average age of Segal executives should remain consistent as the group ages as a whole.

*City Dep't of Educ.*, 2019 WL 4039958, at *7 (S.D.N.Y. Aug. 27, 2019) (considering comments from plaintiff's supervisor "that suggested Plaintiff should retire").

And finally, the entire "sequence of events leading" to Plaintiff's forced retirement supports a finding of age discrimination. *See Littlejohn*, 795 F.3d at 312. In 2019, Blumenstein gave an interview where he talked about transferring leadership to the "next generation" at Segal. (Compl. ¶ 23). At that same time, certain executives started "retiring" and other older executives were replaced by significantly younger employees. (Compl. ¶¶ 26-30). Also at the same time, Blumenstein started asking Plaintiff when he was going to retire. (Compl. ¶ 43).

When Plaintiff did not accede, Blumenstein started giving Plaintiff's key job duties to a significantly younger consultant, limited his discretion/judgment, and stopped going to Plaintiff for advice and counsel. (Compl. ¶¶ 44-50). When that did not work, Blumenstein gave Plaintiff an inaccurate, pretextual performance evaluation and then notice of his termination. (Compl. ¶¶ 56-67). To top it all off, it seems that Blumenstein did not tell anyone – including the Board of Directors – that he fired Plaintiff. (Compl. ¶¶ 68-75). Instead, he crafted a story of voluntary retirement to hide his discriminatory decision-making. (Compl. ¶¶ 68-75).

When considering all the above pleaded facts, together, against the NYCHRL's liberal standard and the minimal showing required to survive a motion to dismiss, the Complaint is more than sufficient. The Court should deny Defendants' motion to dismiss Plaintiff's age discrimination claim.

### C. Defendants' Motion to Dismiss Plaintiff's Breach of Contract Claim Should Be Denied Because Additional Extrinsic Evidence Is Needed and Plaintiff Sufficiently Pleads Involuntary Termination and Breach

As an initial matter, the Confidentiality/Non-Solicitation Agreement between The Segal Company (Eastern States), Inc. and Ricardo M. DiBartolo (ECF No. 12-1; hereinafter,

"Confidentiality/Non-Solicitation Agmt.") – as opposed to the Transition Plan – is the type of agreement that could *potentially* be considered on a motion to dismiss. It is not only integral to the allegations in the Complaint – the breach of contract claim depends on an interpretation of its terms – but it is also explicitly referenced therein. (Compl. ¶¶ 79, 85-90). *See Chambers*, *supra*.

The consideration of the Confidentiality/Non-Solicitation Agreement on <u>this</u> motion to dismiss, however, is fatally flawed. The Confidentiality/Non-Solicitation Agreement specifically states that "[s]everance pay will be provided under the terms and conditions of the Severance Pay Plan," (Confidentiality/Non-Solicitation Agmt., at 5). Defendants, however, do not attach this key document to its motion papers.[7] Without the Severance Pay Plan, the Court cannot accurately interpret all of the Confidentiality/Non-Solicitation Agreement's terms with respect to severance pay, and thus Defendants' motion to dismiss must be denied.

Similarly, additional extrinsic evidence is also needed to interpret the terms of the Confidentiality/Non-Solicitation Agreement. For example, the phrase "involuntarily, for a reason other than misconduct or other cause" is ambiguous – it is not defined anywhere in the Confidentiality/Non-Solicitation Agreement and its terms are susceptible to multiple meanings. *See Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 407 (S.D.N.Y. 2013) ("I thus cannot determine on a motion to dismiss what the parties to the SA may have intended with respect to *involuntary* removal . . . ." (emphasis added)); *Brands Within Reach, LLC v. Belvoir Fruit Farms Ltd.*, 2022 WL 4585445, at *5 (S.D.N.Y. Sept. 29, 2022) ("A complicating factor here is that the term "for cause" is not defined in the Agreement; neither BFF nor BWR

---

[7] Defendants cannot cure this deficiency because parties cannot introduce new evidence on reply. *See Lee v. L. Offs. of Kim & Bae, P.C.*, 161 A.D.3d 964, 77 N.Y.S.3d 676, 678 (2d Dep't 2018) ("The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds or evidence for, the motion.").

addresses this contract ambiguity in its motion papers, and the Court cannot determine on the record presented the precise meaning of "for cause" as used in the Agreement."). Accordingly, additional extrinsic evidence is required and thus the Court should deny Defendants' motion to dismiss Plaintiff's breach of contract claim on this basis alone.

In any event, Defendants' arguments attacking Plaintiff's second cause of action are unavailing. First, Defendants claim that since Plaintiff was never "terminated involuntarily," the Confidentiality/Non-Solicitation Agreement's requirement to pay severance does not kick in. (D. Br. at 14). As explained above in Section III(B)(b), *supra*, however, Plaintiff alleges that he was terminated involuntarily and his signature on the Transition Plan is not conclusive evidence otherwise. Defendants' arguments on this matter fail. Second, Defendants claim that since Plaintiff never signed a release, there has been no breach. (D. Br. at 14). Defendants, however, would have had to have given Plaintiff the ability to sign such a document first – which they never did. In other words, proffering a severance agreement with consideration in the amount of $230,000 is a condition precedent to Plaintiff signing it. Since Defendants have never done so (Compl. ¶¶ 79-80), a breach has been sufficiently alleged.

When considering all the above and the minimal showing required to survive a motion to dismiss, the allegations in the Complaint, again, are more than sufficient. The Court should deny Defendants' motion to dismiss Plaintiff's breach of contract claim as well.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint in its entirety.

If the Court grants any portion of Defendants' motion, Plaintiff respectfully requests that the Court do so without prejudice so that Plaintiff may amend his Complaint to address any alleged deficiencies.

Dated: November 22, 2023                  DORF NELSON & ZAUDERER LLP
      Rye, New York

                                       By: s/Christine Hogan

                                       555 Theodore Fremd Avenue
                                       Rye, New York 10580
                                       Tel: 914.381.7600
                                       chogan@dorflaw.com

                                       *Attorneys for Plaintiff*