UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO DIBARTOLO,

                                        Plaintiff,

                    -v.-

THE SEGAL GROUP, INC. et al.,

                                        Defendants.

23 Civ. 06095 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

Plaintiff brings claims for age discrimination under New York City Administrative Code Section 8-101 *et seq.* (the "New York City Human Rights Law," or "NYCHRL") and for breach of contract against The Segal Group ("Segal," or the "Company") and its Chief Executive Officer David Blumenstein. ECF No. 1 (Compl.). Before the Court is Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6). *See* ECF No. 10. For the reasons set forth below, the Court denies the motion to dismiss Plaintiff's NYCHRL claim in its entirety. In addition, the Court grants Defendants' motion to dismiss Plaintiff's breach of contract claim as to Blumenstein and denies the motion as to the Company.

## I.    BACKGROUND

### A.  Factual Background

Unless otherwise noted, the following allegations are drawn from the Complaint. For purposes of this motion, these allegations are assumed to be true and are construed in the light most favorable to Plaintiff. *See*, *e.g.*, *Kleinman v. Elan Corp., PLC,* 706 F.3d 145, 152 (2d Cir. 2013).

Plaintiff Ricardo DiBartolo was a Senior Vice President ("SVP") and Chief Financial Officer ("CFO") of the Company. Compl. ¶ 1. He was hired as SVP and CFO in 1995 and held those positions for more than 26 years before his forced retirement. *Id.* ¶ 33. Plaintiff received a

bachelor's degree in accounting from St. John's University. *Id.* ¶ 31. He is a Certified Public Accountant and a member of the American Institute of Certified Public Accountants and Financial Executives International. *Id.* Prior to joining Segal, Plaintiff served as Controller, Executive Director, and CFO for several New York City law firms. *See id.* ¶ 32.

After Defendant David Blumenstein became Segal's President and Chief Executive Officer in 2016, he began "pushing Plaintiff to retire." *Id.* ¶ 2. Although Plaintiff "made . . . clear that he was not ready to retire," Blumenstein "started pushing Plaintiff's work to a significantly younger and less experienced outside consultant, second-guessed Plaintiff's advice and counsel, [and] ultimately fabricat[ed] performance issues." *Id.* ¶ 3. From 2019 forward, Blumenstein also required Plaintiff to include succession planning in all of his goal documents and repeatedly asked Plaintiff when he planned to retire. *Id.* ¶ 43. Plaintiff's CFO responsibilities and eventually his "key job duties" were shifted to David Sturdee, an outside consultant, who was approximately 49 years old. *Id.* ¶¶ 44-45. These duties included financial reporting and forecasting, liquidity analysis, Board presentations, banking and loan strategy, expense analysis, stockholder payments and buybacks, and pension schedules. *Id.*

Blumenstein eventually terminated Plaintiff "quietly." *Id.* ¶ 3; *see also* ¶ 63. During a meeting on February 18, 2021, Blumenstein "informed Plaintiff that, in order to receive his bonus from the previous fiscal year and be paid through the end of 2021, Plaintiff had to announce his retirement and help transition his duties to a successor." *Id.* ¶ 65. Plaintiff generally "received bonuses of over $200,000 due to his excellent performance." *Id.* ¶ 66. After the February 18, 2021 meeting, Defendants "created a public narrative that Plaintiff had decided to retire." *Id.* ¶ 68. Plaintiff was eventually replaced by 49-year-old Joseph Fristachi, the Company's former Controller. *Id.* ¶ 5; *see also id.* ¶ 77. Plaintiff alleges that he "was not subject to any retirement policy or system" at the Company. *Id.* ¶ 7. On March 22, 2021,

Plaintiff signed a Transition Plan and Agreement proffered by Blumenstein.  ECF No. 12-2

(Transition Agreement).[1]  The Transition Agreement provides, in relevant part:

> Your Termination Date will be December 31, 2021 ("Termination
> Date"), and the Company agrees not to Terminate you prior to that
> date, provided you remain an employee in good standing, comply
> with the terms of this Agreement and your other obligations to
> Segal, and do not engage in conduct which would otherwise
> warrant termination for "cause."  With a December 31, 2021
> Termination Date, you will be entitled to the following:
>     a) Normal Salary will be paid through December 31, 2021;
>         and
>     b) Health, FSA, life and disability benefits will cease as of
>         December 31, 2021.

*Id.* at 2.

After Blumenstein became Chief Executive Officer, Segal made personnel decisions that

decreased the average age of the Company's leadership team.  Compl. ¶ 25.  In 2019,

Blumenstein "acknowledged his age bias" when, in a magazine interview, he explained that his

professional goal was "stewardship" of the Company and that he wished "to hand the Company

'off to the next generation.'"  *Id.* ¶ 23.  Plaintiff alleges that, in 2021, Blumenstein terminated

him, *inter alia,* "without the knowledge or consent of the full Board of Directors, in order to hide

his age-based animus."  *Id.* ¶¶ 3-4.

Separately, in 2009, the parties entered into a binding contract pursuant to which

Defendants would pay Plaintiff severance.  *Id.* ¶ 86.  Specifically, in a Confidentiality/Non-

Solicitation Agreement, Defendants promised severance pay in the amount of eight months'

salary (i.e., $230,000) upon Plaintiff's "separation of employment."  *Id.* ¶ 79; ECF No. 12-1

---

[1] The Court considers the Transition Agreement and Confidentiality/Non-Solicitation Agreement "integral" to the Complaint.  *See infra* Section III.A.  Nevertheless, "the court is to consider [integral documents] on a Rule 12(b)(6) motion only to determine what the documents stated, and not to prove the truth of their contents."  *See Donoghue v. Gad,* 21 Civ. 7182 (KPF), 2022 WL 3156181, at *5 n.7 (S.D.N.Y. Aug. 8, 2022) (quoting *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).

(Confidentiality/Non-Solicitation Agreement).  The Confidentiality/Non-Solicitation Agreement

provides, in relevant part:

> The Company agrees that in the event Employee's employment is
> terminated involuntarily, for a reason other than misconduct or
> other cause, Employee will be entitled to receive a severance
> benefit based on the following schedule: . . .  Severance pay will be
> provided under the terms and conditions of the Severance Pay
> Plan, which include the requirement that Employee sign a release
> discharging the Company from all claims. . . . This Agreement
> shall be governed by and construed in accordance with the laws of
> the State of New York applicable to contracts made in and
> performed within the State of New York.  Any action to enforce
> this Agreement shall be brought in the County of New York, State
> of New York.

*Id.* at 4-5.  Plaintiff alleges that he "performed all of his obligations" under the

Confidentiality/Non-Solicitation Agreement.  Compl. ¶ 87.  But Defendants "have refused to

offer Plaintiff his contractually owed severance pay and have [instead] offered $100,000—less

than half of what he is owed."  Compl. ¶ 80.

## B.  Procedural History

On July 14, 2023, Plaintiff filed his Complaint.  *See* Compl.  The Complaint alleges age

discrimination in violation of the New York City Human Rights Law and breach of the

Confidentiality/Non-Solicitation Agreement.  *See id.*  Defendants moved to dismiss.  *See* ECF

No. 10.  In support of their motion, Defendants submitted the Declaration of Elizabeth R.

Gorman, ECF No. 11; the Affidavit of David Blumenstein, ECF No. 12, and the

Confidentiality/Non-Solicitation Agreement and Transition Agreement attached thereto; and a

memorandum of law, ECF No. 13 (Br.).  Plaintiff opposed the motion, ECF No. 17 (Opp.), and

Defendants replied in further support of their motion, ECF No. 19 (Reply).

## II.    LEGAL STANDARDS

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (same).

To withstand a motion to dismiss, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (internal quotation marks omitted).  It is not enough to allege facts that are consistent with liability; the complaint must "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021) (same).

## III.    DISCUSSION

### A.    The Court Considers the Transition Agreement but Not the Attached Notes from an Unidentified Person

As previously noted, *see supra* note 1, the Court must determine whether it may consider the Transition Agreement in adjudicating Defendants' motion to dismiss.  Plaintiff argues that the Court should not do so, "[s]ince the Complaint did not reference the Transition [Agreement] or Notes [from an unidentified person] or attach either thereto."  Opp. at 10.  Plaintiff further

contends that consideration of the Transition Agreement would "convert the motion to one for summary judgment." *Id.* at 12.  Neither argument is correct.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (similar).  Additionally, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco*, 622 F.3d at 111.  In contrast, "[w]here a district court considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint, the district court, to decide the issue on the merits, must convert the motion into one for summary judgment." *Foreman*, 19 F.4th at 106.

The Transition Agreement "made Plaintiff's termination formal and official and [], in initiating this action, Plaintiff relied heavily upon the [agreement's] terms and effect, thereby rendering the document 'integral' to the complaint." *Uwakwe v. Bridging Access to Care, Inc.*, No. 15 Civ. 06703 (DLI) (RER), 2017 WL 1048070, at *3 (E.D.N.Y. Mar. 16, 2017); *see also Cordova v. Mike Bloomberg 2020, Inc.*, No. 22-1023, 2023 WL 6119448, at *1 (2d Cir. Sept. 19, 2023) (affirming "district court consider[ation of] offer letters and the employee handbook" that were "integral to the complaint"); *Pucilowski v. Spotify USA, Inc.*, No. 21 Civ. 1653 (ER), 2022 WL 836797, at *3 (S.D.N.Y. Mar. 21, 2022), *aff'd*, No. 22-869, 2022 WL 16842926 (2d Cir.

Nov. 10, 2022) (holding that a "separation agreement, even if not incorporated by reference, is sufficiently integral to the complaint" to warrant consideration); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). "Plaintiff['s] decision to draft the complaint to avoid mentioning the [terms of the Transition Agreement] does not make [the document or its terms] any less integral to the complaint." *See Cordova*, 2023 WL 6119448, at *2 (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001)). The Second Circuit "has authorized district courts to consider documents integral to a complaint but not provided by the plaintiff[] to 'prevent[] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.'" *Dale v. L'Oreal USA, Inc.*, No. 22 Civ. 427 (HG) (LB), 2023 WL 3984345, at *3 (E.D.N.Y. June 13, 2023) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

Plaintiff does not contest the authenticity or accuracy of the Transition Agreement. *See* Opp. at 10-12. Nor does he dispute having signed it. *See id.* Moreover, there are no "material disputed issues of fact regarding the relevance of the document." *DiFolco*, 622 F.3d at 111. For all of the foregoing reasons, the Court considers the Transition Agreement, ECF No. 12-2 at 2-4.[2]

---

[2] The Court also considers the Confidentiality/Non-Solicitation Agreement. Plaintiff refers to the agreement by name in the Complaint, *see* Compl. ¶ 86, and he concedes that his "breach of contract claim [is] based on Defendants' violation of the Confidentiality/Non-Solicitation Agreement," Opp. at 9. Plaintiff has not contested the authenticity or relevance of the document.

Plaintiff argues that the "Notes [attached] to the back of the Transition [Agreement]" are "*not* part of the Transition [Agreement]." Opp. at 11 (emphasis in original). He emphasizes that these "random three pages of notes (from an unidentified person)" "were drafted after Plaintiff signed the Transition [Agreement]" and were attached in an "improper[] attempt to get out-of-context information in front of the Court." *Id.* (emphasis in original). On reply, Defendants clarified that the Notes "[we]re not relied on by Defendants as the basis for dismissal and were included in an effort to produce the entire Transition Plan and Agreement." Reply at 7 n.1. Accordingly, the Court does not consider the Notes, ECF No. 12-2 at 5-7.

## B.    New York City Human Rights Law Claim[3]

Pursuant to Section 8-107(1)(a) of the New York City Human Rights Law, it is an "unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of [] actual or perceived age . . . to discharge from employment such person; or . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a).

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Housing Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). "As a practical matter, however, while a plaintiff need not allege specific facts establishing a prima facie case of discrimination in order to withstand a motion to dismiss, the elements of a prima facie case often provide an outline of

---

Thus, the Court finds that the Confidentiality/Non-Solicitation Agreement is "incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111.

[3]    Plaintiff's claim is against both Defendants. An individual defendant can be held liable if he "participated in the conduct giving rise to the discrimination claim." *Pollock v. Shea*, 568 F. Supp. 3d 500, 512 (S.D.N.Y. 2021) (citing *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020)). There is no dispute that Blumenstein participated in the events at issue.

what is necessary to render a plaintiff's claims for relief plausible." *See Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015). "Courts therefore 'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives defendant[s] fair notice of plaintiff's claim and the grounds on which it rests.'" *Wilson v. N.Y.C. Dep't of Corr.*, No. 11 Civ. 9157(PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013), appeal dismissed (July 24, 2013) (quoting *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)); *see also Galanis v. Harmonie Club of The City of New York*, No. 13 Civ. 4344 (LTS) (AJP), 2014 WL 101670, at *3 (S.D.N.Y. Jan 10, 2014) (same). The prima facie elements are: "(1) [plaintiff] was within the protected age group; (2) was qualified; (3) was subject to an adverse employment action;" and "(4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022).

Plaintiff alleges that he was "74 [years old] at the time of his termination." Compl. ¶ 5. "The NYCHRL bars discrimination on the basis of an employee's 'actual or perceived age' regardless of the age of the employee." *Rimpel v. AdvantageCare Physicians, P.C.*, 486 F. Supp. 3d 625, 634 (E.D.N.Y. Sept. 14, 2020) (quoting N.Y.C. Admin. Code § 8-107(1)(a)). Plaintiff was thus "plainly within the protected class under [this] statutory scheme." *Id.* (ruling that 65-year-old surgeon who was terminated and replaced by a colleague "more than two decades younger" "carried his initial burden of establishing a prima facie case"). Plaintiff further avers that "[h]e held [the SVP and CFO] position[s] for more than 26 years before his forced retirement." Compl. ¶ 33. Plaintiff therefore "sufficiently allege[s] that he 'possesses the basic skills necessary for performance of [the] job.'" *Galanis*, 2014 WL 101670 at *3 (quoting *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir. 2001)), *see also Hird-*

*Moorhouse v. Belgian Mission to United Nations,* No. 03 Civ. 9688 (RWS), 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010) ("Plaintiff's nineteen years at the Mission demonstrate that she had the basic skills necessary for a secretary-receptionist and was qualified for the position"). Accordingly, Plaintiff "has satisfied the first two prongs." *Galanis*, 2014 WL 101670, at *5.[4]

### i. Plaintiff Adequately Pleads that He Was Constructively Discharged

Plaintiff "sufficiently alleges that [Defendants] took an adverse employment action against him." *Galanis*, 2014 WL 101670, at *4. "[T]o survive a motion to dismiss, a plaintiff must plausibly allege that he experienced differential treatment that is 'more than trivial, insubstantial, or petty' and [for which age] was a motivating factor, not the motivating factor." *Shaughnessy v. Scotiabank*, No. 22 Civ. 10870 (LAP), 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024) (quoting *Doolittle v. Bloomberg L.P.*, No. 22 Civ. 09136 (JLR), 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023)). Under this "uniquely lenient" standard, *id.*, "differential treatment of any degree based on a discriminatory motive" is sufficient, *Gorokhovsky*, 552 F. App'x at 102.

Where, as here, the alleged adverse employment action is constructive discharge, "a plaintiff must show that[,] 'rather than discharging him directly, [his employer] intentionally create[d] a work atmosphere so intolerable that he [was] forced to quit involuntarily.'" *See Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 242-43 (S.D.N.Y. 2017) (quoting *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014)). "Work conditions are 'intolerable' if they are so difficult or unpleasant that a reasonable person in the employee's

---

[4] Defendants do not dispute that Plaintiff satisfies the first two prima facie elements. Instead, with respect to the third element, Defendants argue that "there was no adverse employment action or less favorable treatment." Br. at 1. As to the fourth element, Defendants contend that "[P]laintiff has not *adequately* plead[ed] that he was treated less well on the basis of his age." *Id.*

shoes would have felt compelled to resign." *Id*. at 243 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000)).

"A severe reduction in pay may constitute a constructive discharge." *Stokes v. City of Mount Vernon, N.Y.*, No. 11 Civ. 7675 (VB), 2012 WL 3536461, at *7 (S.D.N.Y. 2012); *see also Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004) (observing that a plaintiff "quit[ting] in response to . . . an extreme cut in pay" may amount to constructive discharge); *Bertuzzi v. Chase Manhattan Bank,* No. 98 Civ. 5968 (SAS), 1999 WL 759997, at *4 (S.D.N.Y. Sept. 24, 1999) (commenting that "failure to pay bonuses, accompanied by other factors, can be evidence of intolerable working conditions"). "The percentage of a reduction and the reasonable expectations of the parties are [] relevant to the factual determination whether an employee was forced into an involuntary resignation." *See Scott v. Harris Interactive, Inc.*, 512 F. App'x 25, 28 (2d Cir. 2013).

Plaintiff alleges that Defendant Blumenstein "informed" him that, "in order to receive his bonus from the *previous* fiscal year and be paid until the end of 2021, Plaintiff had to announce his retirement and help transition his duties to a successor." Compl. ¶ 65 (emphasis added). "Similar to every other year in the recent past, Plaintiff [was expecting to] receive[] bonuses of over $200,000 due to his excellent performance." *Id*. ¶ 66. The loss of this bonus would constitute a significant "percentage of a reduction" in Plaintiff's total income, *Scott*, 512 F. App'x at 28, given that "$230,000" was "the amount of 8 months' salary" as of Plaintiff's separation from Segal in 2021, *id*. ¶ 79. Plaintiff "had no choice but to accede to Blumenstein's demands in order to get paid what was lawfully his," i.e., the bonus he had already earned for his work during the 2020 fiscal year.[5] Compl. ¶ 67. Beyond withholding Plaintiff's 2020 bonus,

---

[5] Plaintiff does not allege whether Blumenstein was authorized to exercise discretion to award, reduce, or withhold his bonus. Nevertheless, "[t]he fact that the employer had the right to

Defendants "marginalized Plaintiff by shifting CFO responsibilities to David Sturdee, an outside financial consultant," such that "Sturdee [was] handling Plaintiff's key job duties." Compl. ¶ 44-45.  Meanwhile, "from 2019 forward, Blumenstein . . . would repeatedly ask Plaintiff when he planned to retire." Compl. ¶ 43.

The Court must "treat the[se] various conditions" as "additive" rather than "separate and distinct" because "the effect of a number of adverse conditions in the workplace is cumulative." *Chertkova v. Conn. General Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 476 (S.D.N.Y. 2013); *Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03 Civ. 3556 (RCC), 2004 WL 503760, at *7 (S.D.N.Y. 2004) (denying motion to dismiss where the "combined facts" that Plaintiff "was stripped of her substantive responsibilities, removed from her office, [and] shunted to several inadequate work locations" adequately alleged constructive discharge).  Taken together, the aforementioned allegations render plausible Plaintiff's claim that he "had no choice but to accede to Blumenstein's demand[]" that he retire.  Compl. ¶ 67; *see Stokes*, 2012 WL 3536461 at *7 (denying motion to dismiss where plaintiff's salary was reduced by $75,000 and defendant had "call[ed] for plaintiff's removal" at a press conference).  Indeed, courts in this Circuit have often found that allegations of pay cuts accompanied by other adverse actions, such as a reduction in responsibilities, are sufficient to overcome summary judgment and, when proven, to support a finding of liability at trial.  *See, e.g.*, *Scott*, 512 F. App'x at 28 (holding that a salary reduction of approximately one-third accompanied by "adverse changes in [] title and responsibilities" created an issue of material fact in connection with the plaintiff's constructive discharge claim);

---

allocate a bonus on any ground . . . does not mean that the employer had the right to allocate it [or withhold it] on a ground that . . . violate[d] the law." *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 236 (2d Cir. 2015).

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998) (deeming evidence "sufficient to permit a rational juror to infer that [plaintiff] was the victim of a constructive discharge" where plaintiff's compensation was reduced from $60,000 to $26,000); *Morris v. New York City Dep't of Sanitation*, No. 99 Civ. 4376 (WK), 2003 WL 1739009, at *5 (S.D.N.Y. April 2, 2003) ("[Plaintiff] has alleged that [defendant] told him that if he did not retire, he would be demoted down two levels resulting in a salary reduction of approximately $25,000 and attendant dilution of future pension benefits. These allegations, if true, would be sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." (internal citations and quotations omitted)); *Fogarty v. Near N. Ins. Brokerage Co., Inc.,* No. 96 Civ. 1637 (LBS), 1997 WL 799112, at *2 (S.D.N.Y. Dec. 30, 1997) (upholding jury verdict of constructive discharge where defendant withheld "bonus payments which comprised half of plaintiff's expected salary").

        Defendants argue that Plaintiff "did not suffer any adverse employment action or differential treatment" because he "was offered the opportunity to voluntarily retire in exchange for valuable consideration and accepted the terms of the Transition Agreement he executed."  Br. at 8.  Defendants cite *Gant v. Brooklyn Developmental Ctr.*, 307 A.D.2d 307 (2d Dep't 2003), for the proposition that "[a] plaintiff's decision to enter into a voluntary agreement to resign precludes the plaintiff from later asserting in litigation that they were adversely impacted from a termination."  Br. at 8.  But the dispute in *Gant* involved a "settlement agreement" by which the plaintiff "surrender[ed] her rights to freely contest" her termination.  Appellant's Brief at 4, *Gant*, 307 A.D.2d 307 (2d Dep't 2003) (No. 2002-09439), 2003 WL 23322694 at *4.  Plaintiff's Transition Agreement does not contain any such release.  Moreover, in *Gant*, the employer afforded the plaintiff the opportunity to resign in exchange for "a neutral employment reference,"

among other consideration. *Gant*, 307 A.D.2d at 308. Here, in contrast, Plaintiff was "informed" that, "in order for him to receive his bonus from the previous fiscal year"—i.e., "to get paid what was lawfully his"—he "had no choice but to" retire. Compl. ¶¶ 65, 67. In light of these factual distinctions, *Gant* does not "preclud[e]" Plaintiff "from claiming unlawful termination." Br. at 8 (internal quotation marks omitted). Nor do any of Defendants' other cases compel a different result. *See Ramos v. City of New York*, No. 708792/15, 2017 BL 216865, at *2 (N.Y. Sup. Ct. May 8, 2017) (assessing hostile work environment claims pursuant to the "material adverse change" standard abrogated by *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)) *and Evans v. CAN Ins. Cos.*, No. 96 Civ. 6775 (DLC), 1997 WL 633453, at *3 (S.D.N.Y. Oct. 10, 1997), *aff'd sub nom. Evans v. Cont'l Ins. Co.*, 165 F. 3d 12 (2d Cir. 1998) (granting summary judgment on 42 U.S.C. § 1981 claim where plaintiff "made no allegation of a constructive discharge").

>    ii.  *Plaintiff Adequately Pleads Facts Sufficient to Show the Constructive Discharge Occurred under Circumstances Giving Rise to an Inference of Discrimination*

Regarding the fourth element of the prima facie case, the Court considers whether Plaintiff's allegations "render plausible" that Plaintiff's constructive discharge "occurred under circumstances giving rise to an inference of discrimination." *Santiago*, 634 F. Supp. 3d at 152, 157. "'[T]he evidence necessary to satisfy th[e] initial burden' of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is 'minimal.'" *See Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)). "The fact that a plaintiff was replaced by someone outside [his or her] protected class will ordinarily suffice for the required inference of discrimination at the initial *prima facie* stage of the . . . analysis, including at the pleading stage." *Id.*; *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135

(2d Cir. 2000) ("[A] plaintiff has demonstrated an inference of age discrimination and thus established a prima facie case . . . where the majority of plaintiff's responsibilities were transferred to a younger co-worker."); *Beverly v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 8486 (ER), 2022 WL 873251, at *7, *9 (S.D.N.Y. Mar. 23, 2022) (denying motion to dismiss age discrimination claim under NYCHRL where plaintiff was "over the age of 69" and was replaced by "an approximately 40-year-old" employee); *cf. Williams v. Victoria's Secret*, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 1162908, at *8-9 (S.D.N.Y. Mar. 28, 2017) (dismissing age discrimination claim under NYCHRL as "conclusory" where plaintiff alleged, "[u]pon information and belief, he was eventually replaced by someone under the age of 40" but did not plead the age of the replacement).

Plaintiff avers that he was replaced by Joseph Fristachi, who "[wa]s approximately 49 years old." Compl. ¶ 77. Plaintiff's allegations "are more than sufficient to make plausible" that his constructive discharge "occurred under circumstances giving rise to an inference of discrimination." *See Littlejohn*, 795 F.3d at 313; *see also Zimmermann*, 251 F.3d at 381. In light of the inference of discrimination that arises from a significantly younger employee replacing Plaintiff, the Court need not and does not reach his allegations relating to Defendants' "trend of replacing older employees with younger employees," Compl. ¶ 30, or to Blumenstein having "acknowledged his age bias" in comments to Authority Magazine. Compl. ¶ 19.

Accordingly, Plaintiff's Complaint "alleges sufficient facts to satisfy the requirements of *Iqbal*" with respect to his NYCHRL claim. *See Littlejohn*, 795 F.3d at 313.

## C. Breach of Contract

As a preliminary matter, as Defendants argue, Blumenstein "was not and is not a party to the contract in his individual capacity." Br. at 20. "Under New York law, a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract." *CityR Grp.*

*Holdings LLC v. Foresite Realty Mgmt., LLC*, No. 17 Civ. 7850 (RJS), 2019 WL 1437519, at *3 (S.D.N.Y. Mar. 29, 2019); *see also MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (similar, collecting cases). Here, "[Blumenstein] is not a signatory to the [Confidentiality/Non-Solicitation] Agreement." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 19 Civ. 5263 (GHW), 2020 WL 1989424, at *15 (S.D.N.Y. Apr. 26, 2020) (deeming defendant not bound by an agreement he had not signed); Confidentiality/Non-Solicitation Agreement at 6 (showing signatures for the Company and Plaintiff). Under New York Law, a non-signatory is only liable for breach of contract if he is an *alter ego*, his actions "demonstrate privity of contract," or if he "assumed obligations under the contract." *CityR Grp. Holdings*, 2019 WL 1437519, at *3. There is no allegation that Blumenstein assented to the Confidentiality/Non-Solicitation Agreement or intended to be bound by it in his personal capacity. The claim as to Blumenstein is therefore dismissed.

Plaintiff's contract claim against the Company, however, survives. "Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (same). Plaintiff avers that the Company breached the parties' Confidentiality/Non-Solicitation Agreement by "refusing to pay Plaintiff severance" resulting in damages "in the approximate amount of $230,000 plus costs and interest." Compl. ¶¶ 86, 88, 90. These allegations are sufficient to plead the first, third, and fourth elements of the contract claim. Defendants argue

that Plaintiff has failed to plead the second element: the adequacy of his own performance.  *See* Br. at 19.[6]

The Confidentiality/Non-Solicitation Agreement states that "[s]everance pay will be provided under the terms and conditions of the Severance Pay Plan, which include the requirement that [Plaintiff] sign a release discharging the Company from all claims." Confidentiality/Non-Solicitation Agreement at 5.  But, as Defendants note, "the Complaint does not allege that Plaintiff signed any such release."  Br. at 19.  Plaintiff argues that Defendants never "proffer[ed] a severance agreement with consideration in the amount of $230,000," as required by the Confidentiality/Non-Solicitation Agreement.  Opp. at 22; Confidentiality/Non-Solicitation Agreement at 5 (stating that, for a "Period of Service" of "25 or more years," the "Length of Severance Pay" will be "8 months").  Instead, the Complaint avers that "Defendants offered Plaintiff a payment of $100,000.00 in exchange for his silence and [for] releasing all claims that Plaintiff had against Defendants—less than half of what he is owed."  Compl. ¶ 78.

In general, "when payment of termination benefits is contingent upon execution of a [release] agreement, and the plaintiff does not sign the agreement, the plaintiff is not eligible to receive termination benefits."  *Mullinix v. Mount Sinai Sch. of Med*., No. 12 Civ. 8659 (PKC), 2015 WL 328050, at *2 (S.D.N.Y. Jan. 23, 2015); *see also Olorode v. Streamingedge Inc.,* No. 11 Civ. 6934 (GBD) (AJP), 2014 WL 3974581, at *2 (S.D.N.Y. Aug. 13, 2014) (adopting Report and Recommendation) (dismissing plaintiff's breach of contract claim because "payment of any termination benefits was contingent upon Plaintiffs [sic] execution of the Separation Agreement"

---

[6] Defendants also argue that Plaintiff is not entitled to receive severance because he "was never terminated involuntarily."  Br. at 19.  The Court need not and does not reach that argument given that Plaintiff adequately alleged constructive discharge, *supra* section III.B(i).  Defendants' only remaining argument, addressed *infra*, is that Plaintiff did not adequately plead his own performance.

and "[b]ecause Plaintiff did not sign the Agreement, he was not eligible to receive any

termination benefits"); *Kaul v. Hanover Direct, Inc.*, 148 Fed. App'x 7, 9 (2d Cir.

2005) (Plaintiff "forfeited his right to the severance package by failing to execute a

general release in favor of [defendant] as required, as a condition precedent to

receiving severance benefits, by his employment agreement.")  "However, pursuant to New

York's prevention doctrine, 'a party to a contract cannot rely on the failure of another to perform

a condition precedent where he has frustrated or prevented the occurrence of the condition.'"

*Mullinix*, 2015 WL 328050 at *3 (quoting *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455,

469 (S.D.N.Y. 2007)).  As the New York Court of Appeals has explained:

> A condition precedent is linked to the implied obligation of a party not to do anything
> which will have the effect of destroying or injuring the right of the other party to receive
> the fruits of the contract. Thus, it is a well-settled and salutary rule that a party cannot
> insist upon a condition precedent, when its nonperformance has been caused by himself.

*A.H.A. Gen. Const., Inc. v. N.Y.C. Hous. Auth.*, 92 N.Y.2d 20, 31 (1998) (internal quotation

marks and citations omitted).[7]

Plaintiff has adequately alleged that the Company "render[ed] [his] performance of [the]

condition precedent" (i.e., signing a release) "impossible*," Mullinix*, 2015 WL 328050 at *3, by

"refus[ing] to offer" in consideration for the release the amount on which the parties had agreed

in the Confidentiality/Non-Solicitation Agreement.  Compl. ¶ 79.  The Company's only

---

[7] In *Mullinix*, the court found that plaintiff "was not required to sign the proposed [severance]
agreement as tendered" because the severance agreement "added material terms not required by
the original employment agreement."  *Mullinix*, 2015 WL 328050, at *4.  The court granted
defendant's motion to dismiss, however, with leave to amend the complaint, because plaintiff
"made no effort to determine whether [defendant] was willing to negotiate the terms of the
agreement and she has made no showing that such an effort would have been futile."  *Id.*  Indeed,
in that case, the severance agreement "expressly informed [plaintiff] that [defendant] would
negotiate the terms."  *Id.*  Here, the Complaint adequately alleges that any attempt to negotiate
would have been futile.  *See, e.g.*, Compl. ¶ 80 ("Defendants, however, have refused to offer
Plaintiff his contractually owed severance pay. . . .").

defense—that "the Complaint acknowledges that [the Company] offered Plaintiff the lump sum payment of $100,000 in accordance with the Transition Agreement, and Plaintiff declined to accept it," Br. at 19—is unavailing. The Transition Agreement states, in pertinent part:

> Provided you sign and do not revoke a separation agreement which will be provided to you on or about your Termination Date, to be returned no later than January 21, 2022, you will receive a gross lump-sum payment in an amount to be determined.

Transition Agreement at 3. The Transition Agreement thus does not provide for a payment of $100,000 or even imply that the "lump-sum payment" to be provided on Plaintiff's "Termination Date" would be less than the amount (i.e., $230,000) to which he was entitled pursuant to the Confidentiality/Non-Solicitation Agreement.[8]

Accordingly, Defendant's motion to dismiss the breach of contract claim is granted as to Defendant Blumenstein and denied as to the Company.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is DENIED as to Plaintiff's New York City Human Rights Law claim. The motion is GRANTED as to Plaintiff's breach of contract claim against Blumenstein and DENIED as to his breach of contract claim against the Company.

---

[8] The Transition Agreement does not contain a merger or integration clause, and the parties have not suggested that the Transition Agreement was intended to supersede the Confidentiality/Non-Solicitation Agreement. The Court therefore does not consider whether "the terms [of these agreements] are on the same subject matter," such that the Transition Agreement could override the Confidentiality/Non-Solicitation Agreement in the absence of "definitive language indicating that [the Transition Agreement] revokes, cancels or supersedes that specific prior contract." *Dewitt Stern Group, Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581 (S.D.N.Y. 2017).

The Clerk of Court is directed to terminate ECF No. 10.

SO ORDERED.

Dated: July 31, 2025
New York, New York

JENNIFER H. REARDEN
United States District Judge